BUTTE COUNTY, Appellant, v. LOVINGER, et al, Respondents.

(266 N. W. 127.)

(File No. 7773. Opinion filed March 21, 1936.)

R. A. Smiley, of Belle Fourche, and Hayes & Hayes, of Deadwood, for Appellant.

Chambers Kellar, of Lead, and Dan McCutcheon, of Belle Fourche, for Respondent.

RUDOLPH, J. The principal question involved in this case is whether or not certain waters and stock representing the same are appurtenances to certain lands. The defendants Lovinger and Delaney owned approximately 140 acres of land in Butte county; they also owned 50 shares of stock in the Redwater Irrigating

Association, and by virtue thereof were entitled to 50 miner's inches of water, which water was used to irrigate the land. On the 22d day of July, 1920, the defendants Lovinger and Delaney, for the consideration of $5,000 of school funds of the state of South Dakota, mortgaged these certain lands to the state. A default occurred in the payment of the principal and interest under the notes secured by the said mortgage, and the mortgage was foreclosed in the manner provided by law, and the land sold to the plaintiff herein. No redemption was made, and on the 4th day of April, 1928, plaintiff received a sheriff's deed to the said land. The defendants Lovinger and Delaney insist that the plaintiff acquired no interest in the 50 shares of stock in the Redwater Irrigating Association by virtue of the mortgage and subsequent proceedings thereunder. The plaintiff contends that the stock in the irrigating association represented certain water rights which were appurtenant to the land at the time the mortgage was executed, and that plaintiff acquired these rights by virtue of its ownership of the land.

The facts, which in our opinion must determine the question involved, are virtually without dispute, and may be summarized as follows: On May 5, 1878, one James Newland located a certain water right on Redwater creek in Butte county, whereby he appropriated 4,000 miner's inches of water to be used for "irrigation and milling purposes"; thereafter in 1884 one D. T. Harrison located a water right on said Redwater creek, also appropriating 4,000 miner's inches thereof for "mining, milling, manufacturing, agricultural and domestic purposes"; and in 1885 one C. B. Chouteau and D. T. Harrison located a water right on said creek, appropriating 4,000 miner's inches for "mining, milling, manufacturing, agricultural and domestic purposes"; and in 1889 one John R. Wilson located certain water rights in said creek appropriating 10,000 miner's inches for the purpose of "mining, milling, manufacturing, irrigating and domestic uses." In 1889 the Redwater Land & Canal Company was organized and incorporated under the laws of this state. The articles of incorporation, among other things, provided: "The purpose for which this corporation is formed, is the construction of canals and ditches to convey water to mills, manufacturing establishments, towns, and lands, to be used

for manufacturing, milling, the irrigation of lands, and other useful purposes; and in connection therewith, the colonization, cultivation and improvement of lands. The stream from which the water is to be taken is the Redwater River; * * * It is also the purpose of this corporation to colonize and improve the lands along the route of its said canals and ditches, and in the vicinity thereof, in Butte, Meade and Lawrence counties, in South Dakota, and to buy, own, hold, cultivate, farm and use such lands; to lease, sell or otherwise dispose of the same; to locate, plat, lay out, own and control townsites and villages and to improve ,sell, lease or otherwise dispose of lots and lands in the same; to sell and supply water thereto, and the dwellers thereon, for fire and other public and private uses; to lease, sell or otherwise dispose of its water rights, canals, ditches, lands, franchises and all or any of its other property, or any part thereof, whenever it may be for the interest of the corporation, or its stockholders."

After its organization, the Redwater Land & Canal Company purchased the water rights which had been located on Redwater creek, and which are described above, and thereafter conveyed the water taken from Redwater creek through a system of canals and ditches, and disposed of the water to the residents along the canal upon an annual sale or rental basis. The land, which was mortgaged by Lovinger and Delaney to the state, and the title to which is now in the plaintiff, was along the course of the canal of the Redwater Land & Canal Company, and the occupants of the land at that time obtained water for irrigation purposes by paying therefor to the Redwater Land & Canal Company the price charged by that company for the water. The Redwater Land & Canal Company for several years sold water to manufacturers, millmen, farmers, and citizens generally. Financial difficulties overtook the Redwater Land & Canal Company, and its assets finally were placed in the hands of a trustee for the benefit of bondholders. In 1909 the defendant Redwater Irrigating Association was organized and incorporated under the laws of this state. This corporation was organized for the express purpose of purchasing from the trustee the assets of the defunct Redwater Land & Canal Company. The objects of the Redwater Irrigating Association, as stated in its articles of incorporation, were among others the following:

"(g) To acquire by purchase or otherwise water rights and priorities to the use of water from Redwater River and Falsebottom Creek and the ditches or other waterways through which the same may be applied to beneficial purposes and to apply the said water right and priorities to beneficial purposes through the canal above mentioned or any other canal owned, purchased or constructed by the company or through or in which it has acquired or may acquire the right to apply such water rights or priorities. Also including the right to procure and own by purchase or otherwise such water rights as it may desire for beneficial purposes and also to procure any interest in any reservoirs, ditches or water rights however the same may be represented and all other property used in connection therewith or necessary therefor, using the same for beneficial purposes, together also with the right to change the point of diversion and use of any and all water and water rights owned or so acquired to any point or place in the course of said Redwater River or the Belle Fourche River and to sell or otherwise dispose of any part or all of the ditches, reservoirs, water rights or other property of the company.

"(h) To build, equip and maintain any power plant at any place along the line of any canal which it may own and to build electric power transmission lines and to furnish power to any consumer desiring to use the same. * * *

"The use to which said water is intended to be applied is for power, irrigation, mining, milling and domestic purposes.

"The term of existence of this corporation shall be the full time and period of twenty-five years from and after the date of its incorporation.

"The capital stock of said company shall be $110,000, divided into 2200 shares of the par value of $50 each and each share of stock in said corporation shall represent the right to the use of one miner's inch of water."

The capital stock of the defendant Redwater Irrigating Association was sold principally to the landowners along the canal, which was formerly owned by the Redwater Land & Canal Company and purchased by the defendant irrigating association. Four hundred seventy-two shares of the capital stock were sold to and purchased by persons who had no land capable of irrigation. How-

ever, these shares of stock were not long held by such persons, and soon were owned by people who held land which could be irrigated by the water represented by the shares of stock. The by-laws of the corporation, among other things, provided the following:

## "Article V.

"Sec. 6. While any of the said stock holders shall have complied with the rules and requirements of the corporation and shall not be in arrears upon his subscription agreement, either for principal or interest, said stockholder shall have the right to sell, assign, mortgage, pledge or in any other manner deal with his right to and interest in said certificates of stock standing in his name.

"Sec. 7. The said corporation shall recognize all legal transfers, mortgages or pledges of said stock certificates made by a stock holder who shall not be in arrears to said corporation.

## "Article X.

"Sec. 1. Each holder of shares of the capital stock of this Association shall be entitled to receive from the Company's canal for domestic purposes and for the irrigation of lands lying under the line of said canal, or contiguous thereto, owned or controlled by the said shareholder, or in case said shareholder does not own or control land, or does not wish to use his full pro-rata of water, to such person or persons as said shareholder shall designate by written order to the corporation, in the following manner, to-wit: for each share of the capital stock one miner's inch of water or one-twenty-two hundredths (1-2200) part of the water passing the spill way about one-fourth of a mile below the headgate of said ditch.

"Sec. 2. Provided that no right to the use of water shall accrue to the holder of any stock in less than twenty share lots unless the lands owned or controlled by the shareholder which can be irrigated from the company's canal shall be of an area of less than eighty acres in which case the board of directors may grant the right to appropriate the water for the area they see fit and proper, and provided further that no transfer of water from one head-gate to another head-gate shall be permitted except by and upon order and approval of the Board of Directors or their authorized agent."

It will be noted that under the organization of the defendant company each share of stock that was purchased entitled the holder thereof to the beneficial use of one miner's inch of water to be used either by himself or such other person as he should designate. Following the organization of the defendant company, the record clearly establishes that the stockholders uniformly treated their shares of stock as something apart and separate from the land. The practice of pledging stock as collateral security to a loan has been extensively followed by many of the stockholders, and such stock has been accepted as such collateral by the banks in the community. The shareholders "uniformly and continuously have followed the practice and custom of using their water privileges for such beneficial purposes or upon such land as they desired, and of leasing the water to which they might be entitled to sundry and divers persons for use indiscriminately upon any land where the same could be beneficially used." In addition to supplying water to its stockholders, the defendant irrigating association during its existence has sold and delivered water to persons other than stockholders, which water has been used some for irrigation and some for other purposes. In 1909, when the defendant irrigating association was organized, the land here involved, and to which it is claimed the beneficial use of the water represented by 50 shares of stock is appurtenant, was owned by one Toivinen, who had irrigated this land by purchasing water from the old Redwater Land & Canal Company. Toivinen never owned any stock in the defendant Redwater Irrigation Association. In July, 1910, Toivinen sold this land to one Zink, who at the time owned 75 shares of stock in the defendant irrigating association. During the time Zink owned this land he used the water represented by his shares of stock partly upon this land and partly upon other land owned by him. In 1919 Zink conveyed the land to the defendants Lovinger and Delaney, and also sold and transferred to them 50 shares of stock in the defendant irrigating association.

The trial court held that the right to the use of the water represented by these 50 shares of stock was not appurtenant to the land, and the plaintiff has appealed.

It should be noted that there is no question of riparian rights here involved. The land involved is several miles distant from

Redwater creek, and, if the rights to the water of Redwater creek have become attached to or appurtenant to this land, it is by virtue of the above state of facts and not because of riparian ownership. It should be further noted that the water rights hereinbefore mentioned, which were originally purchased by the Redwater Land & Canal Company from the locators and later by the defendant Redwater Irrigating Association, are in no way in dispute in this action. The only question here presented is whether these concededly valid water rights have attached themselves to this certain land to the extent of 50 miner's inches and to the extent that they pass with a transfer of the land. There is not involved in this case a situation where several persons who owned land and appurtenant water rights surrendered these rights to a distributing company for the purpose of a more convenient and economical distribution of the water to all of the land involved, and in return received stock from the company representing the right to the use of a certain amount of the water being distributed by the company. We mention this fact because in such cases it is generally held that the surrender of the right to the company for convenience in distribution does not change the appurtenant character of the right to the use of the water, and wish to make it clear that no such situation is presented in this case.

It seems to be the contention of the appellant that the rule adopted originally in Colorado concerning the rights in water which is obtained through a distributing company should govern our decision in this case. This rule adopted in Colorado is well expressed in Weil on Water Rights (3d Ed.) § 1338, as follows: "In Colorado and the arid States generally (following the lead of Colorado) the law of appropriation has so completely become the source of rights in waters, that the right of consumers from corporations are made, as far as possible, to conform to the law of appropriation. The rule of the arid States is that (wholly irrespective of mutual companies in private service) the consumer from a ditch is, through the intermediate agency of the ditch, an appropriator from the natural stream from which the company's ditch heads, and a part owner in the natural resource and in the canal and distributing system. The water company thus becomes literally a common carrier of water; owning (in the last analysis) no water

rights of its own, and simply carrying the consumers' water to them from the natural resource, the rights in which also belong to the consuming public. It is closely approaching public ownership of irrigation systems. The right of the consumer is not merely a right of service (without any proprietary right in the water-rights or water system), but is a proprietary right in the natural stream as though the consumer had himself diverted the water from its natural source; the consumer pro tanto is the appropriator and proprietor of the water-right."

Appellant argues that under this rule the distributing company has no interest in the water right, that the only person who has any interest in this water right is the person who puts the water to a beneficial use upon certain land, and that it follows that the right to the water attaches itself to the land upon which it is used beneficially.

The basis for this rule adopted in Colorado seems to be found in the Colorado Constitution, which provides: "The water of every natural stream, not heretofore appropriated, within the state of Colorado, is hereby declared to be the property of the public." Section 5, art. 16, Constitution of Colorado (1876).

We have no such constitutional provision in South Dakota. With this constitutional provision as its basis, the Colorado court has arrived at the result that the person who actually puts the water, which is the property of the public, to a beneficial use, is in fact the appropriator, and owns the right to the use of the water, and that the distributing company is nothing more than a carrier of the water. Wheeler v. Northern Colorado Irrigation Co., 10 Colo. 582, 17 P. 487, 3 Am. St. Rep. 603; Wyatt v. Larimer & Weld Irrigation Co., 18 Colo. 298, 33 P. 144, 36 Am. St. Rep. 280. This Colorado rule is what has come to be known as the "use basis" of the right of appropriation. California, on the other hand, adheres to the so-called "possessory basis" or origin of the right of appropriation. As stated in Wiel (3d Ed.) p. 428: "It (the possessory origin of the law of appropriation) consisted in possession of the flow of the stream; diversion constituted the appropriation because it constituted possession, whence the rule protecting appropriators 'by actual diversion' and likewise the enforcement of the doctrine of relation upon completion of construction work and

diversion; capacity of ditch, as the amount in possession, measured the right; the right, as one to possession of the stream was independent of place or mode of use; nonuse did not cause loss of right without voluntary abandonment of possession; injunctions were granted to protect the flow in possession though no damage to use had arisen. Beneficial use was represented in the acquisition of the right by the requisite of bona fide intention, already set forth. The actual accomplishment of this intention was necessary but the lack of its accomplishment was regarded as matter subsequent, working by way of defeasance, on the principles of abandonment; the right being complete on diversion, that completing the formalities equivalent to taking possession of the stream."

And again on page 1236: "Under the possessory origin, the appropriator was he who held possession of the stream—the canal company—as has always remained the law in California."

It seems to us that the statutes, in force at the time the original water rights here involved were located, recognized this so-called possessory basis as the right of appropriation. These water rights were located principally under chapter 142, Laws of Dakota Territory 1881. Section 9 thereof is as follows:

"*Manner of Locating Water Rights.* That any person or persons, corporation or company appropriating the waters of any streams or creeks in this Territory, shall turn the water from the channel of such creek or stream, and construct at least twenty feet of ditch or flume, within thirty days from the date of appropriation and turn the water therein, and construct at least twenty rods of said ditch or flume if needed within six months from the date of such appropriation and turn the water therein; and within twenty days from the date of location, the locator or locators of such water right, shall file a location certificate thereof with the register of deeds, in the proper county within which such water right is situated; a copy of such certificate shall be posted at or near the head of such ditch, flume or canal and shall contain the name or names of the locators, the date of location, number of inches of water claimed or appropriated and the purpose of the appropriation; and in no case shall the number of inches of water claimed exceed the conveying capacity of the first twenty feet of the flume or ditch, nor shall said ditch or flume be enlarged to

the prejudice or injury of a subsequent appropriator, before such enlargement."

This section of the 1881 law did not, in our opinion, contemplate an actual use prior to a completed appropriation. The appropriation was complete under this law when the water was turned from the channel into a ditch or flume as therein provided, and the location certificate filed and posted. It might be that failure to make use of the water for an unreasonable length of time would constitute an abandonment, but, as we view it under the statute, this would be "regarded as a matter subsequent, working by way of defeasance, on the principle of abandonment; the right being complete on diversion." It seems to us, therefore, that, at the time these rights were acquired, they were acquired under the so-called "possessory basis" of the right of appropriation, and became vested in those who actually located the right as distinguished from the users of the water.

As stated above, the validity of these original water rights, to which the defendant Redwater Irrigation Association has succeeded is not in dispute. These rights, in our opinion, vested in the original locators at the time they were acquired and not in those who used the water. The enactment of chapter 180, Laws of 1907, cannot affect these vested rights. St. Germain Irrigating Ditch Co. v. Hawthorne Ditch Co., 32 S. D. 260, 143 N. W. 124. What effect the law of 1907 has upon the water right law of this state we need not now declare, except to hold in accord with the previous decision of this court that it cannot affect rights which had vested prior to its enactment. We are convinced, therefore, that at the time the Redwater Irrigating Association acquired its right to this water, the right to the beneficial use of any of the water had not attached itself to, or become appurtenant to, this land subsequently owned by the defendants. Under our law, the defendant Redwater Irrigating Association succeeded to the rights of the original locators and owns those rights the same as any other property, subject, however, to possible public regulation which is not involved in this case.

The question now arises whether or not under the plan of organization of the defendant Redwater Irrigating Association the right to the use of this water, represented by stock issued by the

company, became appurtenant or attached to the land. We are convinced that it did not. It is generally held (even in Colorado), unless the by-laws or plan of organization of a water company expressly provide to the contrary, that water rights represented by shares of stock in a water company are personal property and may be sold and transferred independently of any land; and the water represented by such shares cannot be said to be appurtenant to the land on which it is used. George v. Robison, 23 Utah. 79, 63 P. 819; Wells v. Price, 6 Idaho 490, 56 P. 266; Struby-Estabrook Co. v. Davis, 18 Colo. 93, 31 P. 495, 36 Am. St. Rep. 266; Palo Verde Land & Water Co. v. Edwards, 82 Cal. App. 52, 254 P. 922, 923. The by-laws of the corporation as shown above in article V thereof expressly provide that the stockholders have the right to sell, assign, mortgage, or pledge or in any other manner deal with their stock so long as they have complied with the rule of the corporation. Article X expressly provides that the stock might be sold to others than those who hold land along the ditch subject to irrigation. In the case of Palo Verde Land & Water Co. v. Edwards, supra, the California court was confronted with a question almost identical to the question confronting us in this case. In that case the articles of incorporation of the distributing company contained the provision that the stock of the company "shall be located only upon land owned by, or the ownership of which is claimed by, the person desiring to purchase said stock."

This seems to be a much stronger provision upon which to base the contention that the right represented by the stock became appurtenant to certain lands because of the plan of organization of the distributing company than do the provisions contained in the by-laws of the Redwater Irrigating Association, yet, speaking with reference thereto, the California court said: "By this very language of the articles of incorporation it is specially provided that it is not necessary for the purchaser of the stock to own the land, but it is sufficient if he shall claim the ownership. These words show the intention on the part of the corporation and the stockholders to be that the stock might be located upon land not owned by the purchaser and therefore not appurtenant to the land and not to pass with a conveyance of it by virtue of a deed."

Certainly in this case wherein it is provided that stock might

be sold and transferred to any one without regard to land ownership, whether by the stockholders who have purchased the stock or by the corporation itself, it seems to us that it is clear that the right to the use of the water represented by the stock did not become attached to any land by virtue of the plan of the organization of this company.

Appellant further claims, as alleged in its complaint, that:

"The defendants, Charley Lovinger and William Delaney, at the time of applying for said mortgage loan of Five Thousand ($5,000.00) Dollars, represented to the mortgagee, the State of South Dakota, that the premises which were mortgaged by them as aforesaid were irrigated by waters of Redwater River under the water rights for fifty miner's inches, represented by stock which they then owned in Redwater Irrigating Association, fifty shares thereof, of the value of Six Thousand, Two Hundred Fifty ($6,-250.00) Dollars; and by and through such representation of fact said loan was procured.

"That said land with the appurtenant water rights as aforesaid was on said 22nd day of July, 1920, and ever since has continued to be of the value of more than Ten Thousand ($10,000.00) Dollars; that if deprived of the beneficial use of said waters, said land will not be of greater value than Fifteen Hundred ($1,500.00) Dollars."

Upon this issue the trial court found as follows:

"That on or about the 2nd day of June, 1920, the Defendants Charley Lovinger and William Delaney made application to the Plaintiff, County of Butte, for a school fund loan of Five Thousand Dollars, in which application they offered to mortgage as security for the payment of said loan the land described in Paragraph Third of the Plaintiff's complaint, and in such application the said Defendants stated that they owned shares of stock in the Defendant Redwater Irrigating Association, which shares of stock were stated to be of the value of Sixty-two Hundred Fifty Dollars. That the said Defendants did not offer to mortgage or pledge the said corporate shares in the Defendant Redwater Irrigating Association, and did not in their application disclose the number of shares that they owned, nor the quantity of water represented thereby, and did not represent that said land was irrigated under

a water right of fifty miner's inches in amount, represented by shares of stock then owned by them in the Defendant Redwater Irrigating Association. That in said application the said Defendants represented that there were situated upon the said land the following described buildings, to-wit: One two-story house 28x32, one barn 30x50, one machine shed 30x50, one house 18x24, and one chicken house; and further stated and represented that the value of the said buildings was the sum of $6,650, and further stated in the said application and represented that the other improvements upon the land consisted of fences of the value of $400.

"XXIII.

"That thereafter the said application for a loan was accepted by the plaintiff, County of Butte, and thereupon the Defendants Lovinger and Delaney executed to said Plaintiff their promissory note for Five Thousand Dollars secured by a first real estate mortgage on the land described in Paragraph Third of Plaintiff's complaint, which mortgage did not describe or in any manner refer to any shares or certificates of stock in the defendant Redwater Irrigating Association and did not describe or refer in any manner to any water or water rights whatever, nor to any appurtenances whatever.

"XXIV.

"That the Plaintiff at no time made any request for information as to the amount of stock owned by the said Defendants Lovinger and Delaney in said Defendant Redwater Irrigating Association, and made no request for the hypothecation of the same as a part of the security for the payment of said loan, and that none of such stock was ever pledged, mortgaged or hypothecated as security for said loan, or any part thereof, and that it was not the intention of the said Defendants Lovinger and Delaney to mortgage, pledge, or hypothecate as security for the payment of said loan any of said shares of stock, nor the water right privileges or other interest in said Defendant Redwater Irrigating Association represented thereby.

"XXV.

"That the land described in the complaint of the Plaintiff on the 2nd day of June, 1920, the date of the execution of the said

mortgage, was of the reasonable market value of Seventy Dollars per acre without any water or appurtenant water rights, and that lands of similar quality and in the same general vicinity sold at or about that time at such price."

These findings of fact we are convinced are supported by the evidence, and in our opinion dispose of this issue in the case.

The judgment and order appealed from are affirmed.

ROBERTS and WARREN, JJ., concur.

CAMPBELL, J., concurs specially.

POLLEY, J., not sitting.

CAMPBELL, J. (concurring specially). I believe that the water rights involved in this case are represented by and pass with the shares of corporate stock of Redwater Irrigating Association. I do not think, under the circumstances disclosed by the record, that the water rights were appurtenant to the land upon which the water was used in any such sense as to pass by a mortgage of that land in the usual form without any specific mention of water rights. I concur, therefore, in the affirmance of the judgment and order appealed from.

I think, however, that the same result should be reached upon the record in this case whether we say, as a matter of technical legal theory, that the appropriator is the canal company or the consumer. I prefer, therefore, to express no opinion on that particular point, which seems to me in any event rather an academic question than a matter of much practical importance. The cases dealing with the precise point are in a state of much confusion, partly because of a frequent failure to distinguish between public service water companies and mutual canal companies, and partly because the law of the subject seems somewhat in a stage of transition or flux. See Wiel, Water Rights in the Western States (3d Ed.) §§ 139, 282, 396, 508. The proponents of either view do not seem to follow their theory consistently or to pursue it to its logical conclusions in all cases where the point is raised. Even under the so-called "Colorado rule," which appears to declare in some cases and for some purposes that the consumer is the appropriator and the canal company a mere carrier, the canal company is deemed and treated as the appropriator for other pur-

poses. For instance, the canal company may both sue and be sued as an appropriator. Town of Sterling v. Pawnee, etc., Co. (1908) 42 Colo. 421, 94 P. 339, 15 L. R. A. (N. S.) 238; Farmers' etc., Co. v. Agricultural, etc., Co. (1896) 22 Colo. 513, 45 P. 444, 55 Am. St. Rep. 149. And a judgment against the distributing company as appropriator will bind the consumers, whether they be regarded as themselves appropriators and owners of the natural resource or regarded as having only a right of service. Montezuma Canal Co. v. Smithville Canal Co. (1910) 218 U. S. 371, 31 S. Ct. 67, 54 L. Ed. 1074. Again, as stated by Mr. Wiel (§ 396): "The possessory principle is followed regarding change of use, and the right is held not to inhere inseparably in the specific use made; and likewise it is held * * * that an appropriation may be made by one who owns no land of his own."

It may be believed, therefore, that even under the broad language of some of the Colorado decisions to the effect that the consumer is the appropriator, it does not follow as any necessary consequence that the right must be always appurtenant to any particular land. Even if it be assumed as a matter of academic theory that the consumer is the appropriator and that the water right in its inception became appurtenant to the land on which it was used, it is nevertheless true, under all views or theories of appropriation, that the owner of land and of the water right used thereon and appurtenant thereto may sever the right from the land if he so desires and hold it and treat it as nonappurtenant; and he may do this by any method that satisfactorily and sufficiently evidences his intention of so doing. It would appear that, when such owner causes or permits the water right to be represented by shares of stock in a corporation, which are personal property and pass as such like any other corporate stock, he has accomplished or consented to a severance if ever the right was appurtenant to land.

For these reasons I do not believe we are under any necessity of attempting to determine in this case the highly theoretical and more or less academic question of just who may have been, in the eyes of the law, the original appropriator of the water right here involved.