Ed KNODEL, John McMahon, Julian Cheney, Don Carstensen, Dean Schell, Lillian Horton, Don Thorsen, et al., Respondents,

v.

The BOARD OF COUNTY COMMISSIONERS OF PENNINGTON COUNTY, South Dakota, both in its regular capacity as a Board of Commissioners and in its capacity as Pennington County Board of Equalization, together with Helen Daughenbaugh, in her capacity as Pennington County Auditor, Appellants.

John McMAHON, Julian Cheney, Don Carstensen, Dean Schell, Lillian Horton, Donald Thorsen, et al., Appellants,

v.

The BOARD OF COUNTY COMMISSIONERS OF PENNINGTON COUNTY, South Dakota, both in its regular capacity as a Board of Commissioners and in its capacity as Pennington County Board of Equalization, together with Helen Daughenbaugh, in her capacity as Pennington County Auditor, Cross-Appellants.

Nos. 12117, 12250 and 12251.

Supreme Court of South Dakota.

Argued May 17, 1978.

Decided Aug. 10, 1978.

Rehearing Denied Sept. 14, 1978.

Charles Rick Johnson, of Johnson, Johnson & Eklund, Gregory, for the Rural Taxpayers, respondents in No. 12117 and appellants in No. 12250.

Gordon Verne Goodsell and James H. Wilson, of Wilson, Olson & Goodsell, Rapid City, for Pennington County, appellants in No. 12117 and cross-appellants in No. 12251.

ANDERST, Circuit Judge.

This matter comes before us as a consolidated appeal from two separate judgments entered by the trial court on a 1975 tax appeal and a 1976 tax appeal. For purpose of clarity, the Board of Commissioners of Pennington County, South Dakota, both in its regular capacity as Board of Commissioners and in its capacity as Pennington County Board of Equalization, together with Helen Daughenbaugh, in her capacity as Pennington County Auditor, appellants in the 1975 tax appeal, and respondents and cross-appellants in the 1976 tax appeal, will be referred to hereafter as "County." Ed Knodel, et al., respondents in the 1975 tax appeal, and John McMahon, et al., appellants and cross-respondents in the 1976 tax appeal will be referred to as "Rural Taxpayers."

On July 16, 1975, approximately 326 taxpayers (Rural Taxpayers) of Pennington County, all members of the Rural Pennington County Tax Association, filed a petition to appeal the decision of the Board of County Commissioners of Pennington County acting as the Pennington County Board of Equalization (County) challenging the validity and the amount of the assessment upon their agricultural property and structures in Pennington County. Trial to the court was held in June of 1976; the judge rendered a memorandum decision in September 1976; and Findings of Fact, Conclusions of Law and Judgment were entered on October 7, 1976. On August 2, 1976, substantially the same group of taxpayers filed a petition for appeal to the circuit court challenging the 1976 assessment of their property. Findings of Fact, Conclusions of Law and Judgment were entered in that appeal on April 11, 1977. Timely appeals were perfected from both judgments. The parties stipulated the appeals to this court be consolidated for briefing and argument, the last brief being filed with this court on February 27, 1978.

In September of 1973, the County contracted with the Jacobs Company, Inc., an

appraisal and property tax consulting company, to provide technical advice and assistance to the County in connection with the valuation of all assessable real property located in Pennington County. The 1975 and 1976 assessments were carried out under the direction of the Pennington County Director of Equalization with the assistance of the Jacobs Company.

The director of equalization and the Jacobs Company developed a method of appraising agricultural real property. An index was compiled rating all of the various types of agricultural land in the county according to the capability of the land to produce agricultural products. Soil, terrain and topographical conditions of the property; present market value; the character of the area and place where the property was located; and other agricultural factors were considered.

Agricultural land was initially divided into two divisions, crop land and range land. The various types of land within each division were indexed according to their respective productivity. The two indexes, the crop land index and the range land index, were reconciled to a single index showing the respective productivity of all types or classes of agricultural land in the county. After compiling the single index showing the relative productivity of all classes of agricultural property in the county, eight sales were selected and studied to determine a ratio of price to productivity. The completed average for all sales was then applied to the various productivity ratings to determine per acre value for each class of property.

Soil conservation service soil survey maps, photographs, land stat imagery and topographical maps were used to classify each parcel of agricultural land in the county. The land was then personally viewed by the director of equalization, after which he valued each parcel according to the value of the classes of land within the parcel.

Rather than introduce evidence relative to all 326 appeals, the parties entered into a stipulation whereby the Rural Taxpayers were to submit the testimony of certain designated taxpayers on the issues and this testimony was to be considered as being representative of the other taxpayers who participated in the appeal. It was in compliance with the foregoing stipulation that nine taxpayers gave complete testimony relative to how the assessment affected them, with two or three additional taxpayers giving some testimony toward the end of the Rural Taxpayers case.

The trial judge in the 1975 tax appeal held that the assessment formula used by the director of equalization to reassess all the agricultural property in the county was erroneous and failed to comply with the applicable South Dakota assessment statutes, SDCL 10–6–33. The trial judge further found the formula failed to properly consider a number of the requirements of the assessment statutes; it was based on an inadequate number of land sales which were not properly adjusted for other elements affecting them; it disregarded actual use being made of land by farmers and ranchers; it placed an improper emphasis upon land sales; it disregarded the capacity of the range land to carry and raise livestock; and it included erroneous adjustment factors with the result that all of the agricultural land involved in the appeals were excessively valued for tax purposes. The court from these findings concluded the assessments to be unlawful and void and ordered the director of equalization to conduct a new assessment following guidelines set down by the court.

For the 1976 tax appeal, the parties stipulated that if a trial were to be had, the same testimony would be given by both sides as was given in the 1975 tax appeal. The parties also agreed the 1976 assessment had been conducted by the same identical method that the 1975 assessment had been conducted. The Rural Taxpayers further argued the amendment made to SDCL 10–6–33.1, which became effective July 1, 1975, eliminated comparative sales as a factor in assessing agricultural land. In its decision on the 1976 appeal, the trial court found that the assessment for that year was unlawful and void for the same reasons that it

found the 1975 assessment to be void. A reassessment was ordered, requiring the director of equalization to reassess the property, taking into consideration the guidelines set down by the court including the market value of the land as determined from comparative sales and after the reassessment, to apply the statutory 60% factor to the full and true value of the property in determining the taxable value.[1]

The County appealed from the court's findings in both the 1975 appeal and the 1976 appeal that the assessment was excessive and void. The Rural Taxpayers have appealed the court's finding that market value be an element in the valuation process and the application of the statutory 60% factor in determining the taxable value in the 1976 appeal.

 The Constitution of South Dakota, Art. XI, Section 2, requires "[t]axes shall be uniform on all property of the same class, . . . and the valuation of property for taxation purposes shall never exceed the actual value thereof." SDCL 10–6–33 provides "[a]ll property shall be assessed at its true and full value in money . . . ." "True and full value" is defined by SDCL 10–6–1(5) as "the usual cash selling price at the place where the property to which the term is applied shall be at the time of the assessment." In an appeal to the circuit court, the court does not merely have power to determine whether an assessment is excessive or arbitrary, but exercises independent judicial judgment to determine valuation. *Sheraton-Midcontinent Corp. v. County of Pennington*, 1959, 77 S.D. 554, 95 N.W.2d 892; *Rau v. Fritz*, 1965, 81 S.D. 311, 134 N.W.2d 773. In giving effect to these constitutional and statutory provisions, the court may give the taxpayer relief where property is assessed at more than its actual value even though there is no proof that a reduction is necessary to effect uniformity with other property of the same class; *Williams v. Stanley County*, 1942, 69 S.D. 118, 7 N.W.2d 148, where property is assessed at

more than its true and full value in money; *In re Appeals of Jepsen*, 1956, 76 S.D. 421, 80 N.W.2d 76, where, without regard to "actual value" or "true and full value in money" the assessment lacks uniformity and is grossly inequitable; *In re Robinson*, 1951, 73 S.D. 580, 46 N.W.2d 908, or where discrimination exists, reduction of valuation to such an amount as may be necessary to remove the discrimination. *Chicago, R. I. & P. Ry. Co. v. Young*, 1932, 60 S.D. 291, 244 N.W. 370.

 The appealing Rural Taxpayers bear the burden of overcoming the presumption that the director of equalization's valuation was correct. They must produce sufficient evidence to show the assessed valuation was in excess of true and full value, lacked uniformity in the same class or was discriminatory. *Yadco, Inc. v. Yankton County*, 1975, S.D., 237 N.W.2d 665. Even if the director of equalization fails to fully comply with statutory mandates, rendering the assessment void, a taxpayer cannot avail himself of such invalidity without also showing that the tax levied was unjust and inequitable. *Brink v. Dann*, 1913, 33 S.D. 81, 144 N.W. 734. Substantial compliance with legislative directives is sufficient in determining assessed valuation.[2] *Hot Springs v. Fall River Landowners*, 1978, S.D. 262 N.W.2d 33.

 This court's proper scope of review of a trial court's decision in a trial de novo of an assessment matter is whether the decision of the trial court was "clearly erroneous." *Yadco, Inc. v. Yankton County*, *supra.* Our review of the trial court's findings show it made several findings wherein the director of equalization failed to follow the statutory mandates. This fact was conceded to by counsel at time of oral argument. The trial court also found that the formula and method used resulted in an *excessive* valuation of taxpayers land. (emphasis supplied) From these findings, the court concluded as a matter of law the

---

1. The Statute, SDCL 10–6–33, was amended in 1977.

2. This does not mean we condone willful disregard by officials of legislative mandates and directives.

assessments were void for the reason the director of equalization "fails[ed] to comply with [the assessment statutes]" and the assessed values were "in excess of the values called for by [the applicable statutes]." Judgment was accordingly entered.

The findings must support the conclusions and judgment. *Kirkeby v. Renaas*, 1971, 85 S.D. 515, 186 N.W.2d 513. Specific findings may well be the deciding factor of an appeal. Failure to make findings thereon requires a reversal of the judgment. *Bell v. Midland Nat. Life Ins. Co.*, 1960, 78 S.D. 349, 102 N.W.2d 322. There being no findings the director of equalization did not substantially comply with statutory mandates; that the land was assessed in excess of its true and full value; lacked uniformity; was discriminatory or that the tax levied was unjust or inequitable; the court could not reach the conclusion as a matter of law that the assessment was void. Noncompliance with mandatory statutes and excessive valuations are not sufficient findings to grant a taxpayer relief. Findings must specifically show that if there was noncompliance with statutory mandates, the tax levied was unjust and inequitable; if excessive, the value is in excess of true and full value, lacked uniformity in the same class or was discriminatory.

These appeals fall within our scope of review. Wrong standards were applied by the trial court. The findings are not sufficient to support the conclusions on the judgments. The judgments appealed from are reversed.

Because of our decision on this issue, it is not necessary to discuss the issues raised by the Rural Taxpayers.[3]

All the Justices concur.

ANDERST, Circuit Judge, sitting for ZASTROW, J., disqualified.

3. Our decisions in *Hot Springs v. Fall River Landowners*, supra, and *County of Butte v. South Dakota State Board of Equalization*, 1978, S.D., 263 N.W.2d 140, issued while the instant case was being appealed, upheld the trial court's determination the director of equalization could use market value as a factor in computing true and full value.