In the Matter of the Appeal of BUTTE COUNTY From the Decision of the South Dakota State Board of Equalization, In the Appeals of Richard Reder and Marjorie Reder, Louis R. Adams, Gary D. Gotfredson and Debra A. Gotfredson, William Keiry or Naida Keiry, Manuel Kindsfater, Jerry L. Olson and Delores F. Olson, Seven-H Ranch, Charles R. Shaykett and Dorothy M. Shaykett, Robert L. Shevling, Neil Shuck, Hazel I. Yuill, R. Thornton Vallery and Gwenivere L. Vallery, Robert E. Fickbohm and Elaine L. Fickbohm.

No. 14553.

Supreme Court of South Dakota.

Argued Jan. 10, 1985.

Decided April 2, 1986.

---

Laurence C. Zastrow, of Carr, Zastrow & Pluimer, Belle Fourche, for Butte County, appellant.

Charles A. Wolsky, of Morman, Smit, Shepard, Hughes & Wolsky, Sturgis, for Reder, Adams, Keiry, Seven-H Ranch, Shaykett, Shevling, Shuck, Yuill, and Vallery, landowners and appellees.

HENDERSON, Justice (on reassignment).

## ACTION

This is an appeal by Butte County from a Judgment of the Eighth Judicial Circuit requiring Butte County to reassess the agricultural land of thirteen Butte County taxpayers (landowners). We affirm in part and reverse in part.

## PROCEDURAL HISTORY–FACTS

Prior to 1981, Butte County's procedures for assessing agricultural land were similar to assessment procedures previously approved by this Court. *See Matter of Refusal of State Board of Equalization,* 330 N.W.2d 754 (S.D.1983); *Mortenson v. Stanley County,* 303 N.W.2d 107 (S.D. 1981); and *Knodel v. Board of County Comm'rs,* 269 N.W.2d 386 (S.D.1978). In 1981, however, Butte County implemented an assessment procedure whereby agricultural land actually irrigated was assessed by using inflated soil productivity ratings. These inflated soil productivity ratings, or irrigation ratings, were constructed by comparing the crop yields of different irrigated soils to the crop yields of the best dryland soil. Based on these comparisons, an irrigation rating was assigned to each irrigation soil type with the final irrigation productivity rating being reduced so as to reflect the increased expenses incurred by irrigating irrigable soils. The total irrigated acres for each soil type were then determined and each type of irrigated soil was assigned a dollar

value. These dollar values were calculated through the use of two tables. The first table calculated irrigated soil dollar values by using a total Butte County agricultural land value of $120,671,000—an amount calculated by a South Dakota Department of Revenue sales ratio study. The second table calculated irrigated soil dollar value by using a total Butte County agricultural land value of $73,073,500—the 1977 Butte County agricultural land assessment. In the end, because of severe drought conditions, the second table was the table used to assign a dollar value to each type of irrigated soil in Butte County.[1]

After the 1981 tax assessment notices were sent, one of the landowners herein ultimately appealed to the State Board of Equalization (State Board) seeking a change in the assessment of his lands. This landowner claimed that his lands should not be classified as irrigated land because it was irrigated by a center pivot system. The State Board decided that center pivot irrigation systems were not comparable to ditch irrigation and that lands irrigated by center pivot systems should be valued as dryland. This decision was not appealed by Butte County to the circuit court.

In late 1981, a new South Dakota Department of Revenue sales ratio study determined the total Butte County agricultural land value to be $152,000,000. However, because of still prevalent severe drought conditions, it was decided to continue to use the second table referred to above, so as to determine the dollar value of irrigated soils.

In 1982, the thirteen landowners herein, some who used center pivot irrigation systems and some who used ditch irrigation systems, appealed their 1982 assessments to the Butte County Board of Equalization (County Board). The County Board refused to grant relief and the landowners appealed to the State Board. SDCL 10–11–42. The State Board ordered reassessment of the landowners' property as dryland and Butte County appealed this decision to the circuit court. SDCL 10–11–43. Butte County also sought and was granted a stay of execution and thereafter the circuit court granted Butte County's Motion to Set Aside and Vacate the State Board's decision because of alleged jurisdictional defects. The State of South Dakota appealed to this Court and we determined that the State Board had jurisdiction and we remanded for further proceedings. See Appeal of Butte County, 336 N.W.2d 151, 152–53 (S.D.1983).

Trial de novo was held in circuit court on December 22, 1983, and January 5, 17, 18, and 19, 1984. By Findings of Fact and Conclusions of Law and a Judgment dated March 12, 1984, the circuit court ordered Butte County to change the landowners' irrigated land assessments to dryland assessments and provide appropriate rebates for prior erroneous assessments.

From this Judgment, Butte County now appeals.

## DECISION

### I.

IS THE ACTUAL IMPLEMENTATION OF AN IRRIGATION SYSTEM A PROPER FACTOR TO BE CONSIDERED IN THE ASSESSMENT OF AGRICULTURAL LANDS?

When reviewing a circuit court's decision after a de novo trial of an assessment matter, this Court's proper scope of review is to determine whether the circuit court's decision is clearly erroneous. Knodel, 269 N.W.2d at 389. In the present case, the

1. Butte County's brief acknowledges at this point that 1980, the year these irrigation productivity ratings were formulated, was also the year the "Dakota Proposition" was to appear on the November ballots as an initiative measure, and that had it passed, tax assessments would have been rolled back to the 1977 assessment levels. See 1980 S.D. Sess. Laws ch. 5, § 2(a). At this

point, we acknowledge that in 1978, the people of this state adopted by vote South Dakota Constitution Article XI, § 13, and that this constitutional provision "constitutes a significant restriction on the legislature's ability to increase the rate of certain taxes." Homestake Mining Co. v. Johnson, 374 N.W.2d 357, 362 (S.D.1985).

circuit court concluded, inter alia, that irrigated land should not be *separately classified* but should be considered as dryland and assessed according to SDCL 10–6–33.1 and SDCL 10–6–33.2. After a review of the record, briefs, and arguments herein, together with the relevant statutes and cases, we are not left with a definite and firm conviction that a mistake has been committed. *In re Estate of Hobelsberger,* 85 S.D. 282, 289, 181 N.W.2d 455, 459 (1970). We therefore affirm the circuit court's decision herein.

For taxation purposes, all property is classified as either agricultural or nonagricultural property, SDCL 10–6–31, and if two of three statutory criteria are met, land will be classified as agricultural land. SDCL 10–6–31.3. Under SDCL 10–6–33.1, the tax assessment valuation of agricultural land is to be based on the following factors:

(1) The capacity of the land to produce agricultural products as defined in § 10–6–33.2;

(2) Soil, terrain, and topographical condition of property;

(3) The present market value of said property as agricultural land as determined by the factors contained in subdivisions (1), (2), (4) and (5) of this section;

(4) The character of the area of place in which said property is located; and

(5) Such other agricultural factors as may from time to time become applicable.

SDCL 10–6–33.2 further provides:

Capacity of land in agricultural use to produce agricultural products shall be based on average yields under natural conditions, in the case of land producing crops or plants, and on the average "acres per animal unit," in the case of grazing land; said average shall affect each operating unit and shall be based on the ten-year period immediately preceding the tax year in issue. In determining such capacity to produce, the county director of equalization and/or the county board of equalization must take into con-

sideration yields, and/or carrying capacity, as determined by the soil conservation service, the agricultural stabilization and conservation service, the extension service, federal land bank and private lending agencies dealing with land production capacities.

■ Land is defined in SDCL 43–1–4 as "the solid material of the earth, whatever may be the ingredients of which it is composed, whether soil, rock, or other substance." Butte County's valuation assessment procedures, however, went beyond assessing the earth's capacity, in and of itself, to produce agricultural products, for it attempted to assess the earth's capacity to produce according to the farming and crop nurturing systems actually implemented and employed by the individual landowner. Butte County attempted to establish a separate classification for irrigated land. This, we conclude, Butte County cannot do.

There are approximately 68,000 acres of irrigated land in Butte County, South Dakota, and various methods are used to apply water on the land. These irrigation methods include ditch and gravity flow systems, center pivot sprinkling systems, underground and above-ground pipe sprinkling systems, subsoil irrigation systems, and spreader dams. These irrigation systems use numerous pieces of equipment such as electric and fuel-driven pumps and engines, sprinklers, gates, pipes, and hose. To the extent this equipment constitutes personal property, however, it is not subject to taxation, for personal property taxes were repealed in 1978. *See* 1978 S.D. Sess. Laws chs. 72 and 73. Additionally, the motor fuel and electricity used to power these pumps and engines is exempt from retail sales taxes. *See* SDCL 10–45–19 and SDCL 10–45–19.1. The landowners procure water for their irrigation systems from various sources. Most of the landowners receive their water from the Belle Fourche Irrigation District, but some of the landowners receive water from private irrigation associations, flowing streams, creeks, rivers, wells, and dams. Water for

irrigation, however, is not always available. Many of the landowners have junior or secondary water rights and many times water will only be available for those with principal water rights. The availability of water and the variance of classes of water rights therefore greatly affects the efficiency and ability to irrigate from year to year. By implementing the irrigation tax assessment procedures here in question, Butte County has implanted within the assessment process, collateral factors and considerations subject to continuous variation. The statutory scheme embodied within SDCL 10-6-33.1 and SDCL 10-6-33.2, however, provides an objective method for assessing the value of agricultural lands based on constant and universal factors. The soil, terrain, topography, character of the area, market value, and the capacity of the earth to produce are to be examined and assessed appropriately.[2] These factors are applicable to all agricultural land and the statutory scheme provides an objective and uniform method for assessing value. The farming practices of the individual landowners are not to be considered when assessing the *land's* value. Farm management decisions cannot change the *earth's* value for taxation purposes. *Mortenson v. Stanley County*, 303 N.W.2d at 111. Likewise, a farm management decision to implement an irrigation system cannot change the *earth's* value for taxation purposes. Nor can we read SDCL 10-6-33.1 and SDCL 10-6-33.2 as permitting consideration of the actual implementation of an irrigation system. "As a general rule, statutes which impose taxes are to be construed liberally in favor of the taxpayer and strictly against the taxing body." *Nash Finch Co. v. South Dakota Dep't of Revenue*, 312 N.W.2d 470, 472 (S.D.1981). "When the legislature imposes a tax, it must do so in clear and express language with all ambiguity and doubt in the particu-

lar legislation being resolved against the one who seeks to impose the tax." *Kearney & Trecker Corp. v. Wisconsin Dep't of Revenue*, 91 Wis.2d 746, 753, 284 N.W.2d 61, 64 (1979). We therefore affirm the circuit court's determination that the actual implementation of an irrigation system is not a proper consideration and that irrigated land should not be separately classified.

■ This does not mean, however, that the land's irrigability, whether actually irrigated or not, is not a relevant consideration when assessing agricultural land value. The irrigability of land enhances its value and this Court has so recognized. *See Basin Elec. Power Coop., Inc. v. Cutler*, 254 N.W.2d 143 (S.D.1977); and *Nebraska Elec. Generation & Transmission Coop., Inc. v. Tinant*, 90 S.D. 284, 241 N.W.2d 134 (1976). Thus, to the extent the land is irrigable, because of its location, soil, terrain, topography, and appurtenant and nontransferable water rights, *see* SDCL ch. 46-5, its value may be assessed appropriately.[3] However, to the extent irrigability is already considered in the market value analysis, soil survey, etc., it should not be separately reevaluated, for double taxation based on this single factor would result. Therefore, we reverse that part of the circuit court Judgment which determined that the land's irrigability is not a criteria for an increase in the valuation of agricultural land.

## II.

DID THE CIRCUIT COURT ERR IN ORDERING THE REASSESSMENT OF THE LANDOWNERS' AGRICULTURAL LANDS?

South Dakota Constitution Article XI, § 2, provides in part: "Taxes shall be uniform on all property of the same class, and shall be levied and collected for public pur-

---

**2.** There are thousands of acres of land in Butte County, because of soil composition and terrain, which are nonirrigable. There are topographical upheavals of rock and buttes causing much of the land in Butte County to have great scenic beauty but unyielding in agricultural production.

**3.** We note that transferable stock in private irrigation companies is personal property, *Butte County v. Lovinger*, 64 S.D. 200, 266 N.W. 127 (1936), and would not be a relevant consideration in determining the land's irrigability.

poses only." In an appeal to a circuit court on a tax assessment matter, the circuit court may give the taxpayer relief if the assessment lacks uniformity and is grossly inequitable without regard to the actual value or true and full value of the subject property. *In re Robinson*, 73 S.D. 580, 46 N.W.2d 908 (1951), *rev'd on other grounds*, 89 S.D. 651, 237 N.W.2d 665 (1975). *See also, Knodel*, 269 N.W.2d at 389. Additionally, failure to comply with statutory provisions regulating assessments renders the assessment void, and if the tax levied thereby is unjust and inequitable, the taxpayer may avail himself of such invalidity. *Brink v. Dann*, 33 S.D. 81, 101, 104, 144 N.W. 734, 736, 738 (1913).

 In the present case, as determined above, Butte County substantially failed to comply with the statutory provisions regulating assessments when it increased valuations because of the actual implementation of irrigation systems. Irrigated land, as such, cannot be separately classified. Perforce, the assessments of the landowners' property in this case, are therefore void. Because lands capable of irrigation, although not actually irrigated, were assessed at lower values, the landowners' tax assessments were inequitable. We therefore affirm the circuit court's decision requiring the reassessment of the landowners' agricultural lands consistent with this opinion.

Accordingly, the Judgment appealed from is affirmed in part and reversed in part.

ANDERSON, Circuit Judge, concurs.

MORGAN, J., concurs specially.

FOSHEIM, C.J., and WUEST, J., dissent.

ANDERSON, Circuit Judge, sitting by appointment.

SABERS, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

MORGAN, Justice (concurring specially).

I agree with the majority opinion that to the extent irrigable land enjoys a higher valuation than other land, that value may be assessed for taxation purposes. I write specially, however, to express my concern over how irrigability becomes a relevant consideration when assessing agricultural land values, and what should be considered in determining irrigability.

The majority opinion correctly points out that the implementation of an irrigation system is not, in and of itself, a proper classification for assessment purposes. Irrigability of the land is, however, a proper criteria to be considered in the assessment. The inquiry then becomes: How does the Board of Equalization "factor in" the land's irrigability? The designation of land actually under irrigation may, of course, seem obvious. But essentially, most crop land is irrigable, given the proper quantity and quality of water. As the trial court pointed out in its findings, "the availability of water and variance of classes of water rights greatly affects the ... capacity to irrigate from year to year."

The process of land valuation has entered the computer age. The Director of Equalization records the ownership of real property and forwards sales information to the Department of Revenue. This information, along with information from soil survey maps and crop capability ratings, are used to calculate the average dollar values per acre. We approved use of this information in *Refusal of State Board of Equalization*, 330 N.W.2d 754 (S.D.1983), and *Mortenson v. Stanley County*, 303 N.W.2d 107 (S.D.1981).

Using this computer technology, I am convinced the necessary irrigation information can be factored in the assessment valuation without amendment of the present statutory directives. SDCL 10–6–33.1. I believe, however, this information must include the availability and the quality of the water rights. Additionally, the type of irrigation system available, be it center pivot, ditch and gravel flow, galed pipe, spreader

dams or subsoil irrigation, appears relevant to some extent in the equation.

I agree that the formula Butte County officials used in this case was not supported by the evidence. With the caveats mentioned above, I concur with the majority opinion.

FOSHEIM, Chief Justice (dissenting).

The majority opinion appropriately finds that irrigability of land is a relevant consideration when assessing agriculture land values. However, I would conclude that the trial court clearly erred in ruling that the County must assess appellees' land values using only dryland tables.

Butte County requested and received an Attorney General's opinion on the propriety of considering the irrigation factor in land assessments. Assessment of Irrigated Agricultural Land, Op. Att'y Gen. No. 80–36, p. 202 (May 12, 1980). The Attorney General ruled "the Butte County Assessor is correct in considering the value of irrigation to real property valuation for purposes of taxation. Clearly, under SDCL 10–6–33.1, and administrative rules such as 64:03:04:09,[1] the assessor is properly exercising his authority in considering present market value of land in light of the irrigation factor. SDCL 10–6–33.2 does not cast any shadow upon this evaluation process in my view." *Id.* at 204.

We have consistently assured our public officials that practices based on Attorney General's opinions will not be disturbed by the courts unless clearly unsupported by the law. *Jordan v. Mellette County,* 38 S.D. 299, 301, 161 N.W. 279, 279–80 (1917); *see also State ex rel. Widdoss v. Esmay,* 72 S.D. 270, 273, 33 N.W.2d 280, 282 (1948); *Tulare Independent School District No. 36 v. Crandon School District No. 17,* 47 S.D. 391, 395, 199 N.W. 451, 452 (1924). For the reasons now discussed, we cannot conclude that considering the irrigation factor is clearly unsupported by the law.

SDCL 10–6–33.1 provides:

In fixing the true and full value in money of property, under the provisions of § 10–6–33, the value of agricultural land as defined by § 10–6–31, and which has been used primarily for agriculture use for at least five successive years immediately preceding the tax year for which assessment is to be made shall be based on consideration of the following factors:

> (1) The capacity of the land to produce agricultural products as defined in § 10–6–33.2;
>
> (2) Soil, terrain, and topographical condition of property;
>
> (3) The present market value of said property as agricultural land as determined by the factors contained in subdivisions (1), (2), (4) and (5) of this section;
>
> (4) The character of the area of place in which said property is located; and
>
> (5) Such other agricultural factors as may from time to time become applicable.

SDCL 10–6–33.2 requires that capacity to produce agricultural products be based on "average yields under natural conditions." The parties are divided on whether irrigation is a "natural condition" and thus a permissible factor in determining the capacity of agricultural land to produce under SDCL 10–6–33.1(1). Landowners argue that cultivation is a natural condition, even though it involves human intervention, because agricultural land is always cultivated. They contend that irrigation, on the contrary, increases land values only because an artificial and unnatural water source is supplied. It is the position of the County that irrigation is a natural condition when, like cultivation and fertilization, soil conditions and water availability make it a normal farming practice.

Nothing in the statutes or regulations precludes the irrigation factor in land assessments or requires us to overrule the Attorney General's opinion. I accordingly

---

**1.** A.R.S.D. 64:03:04:09 provides:

In setting the final value, appraisers shall take into consideration and make the necessary adjustments for special conditions affecting desirability of the property under appraisal.

see no reason why it was not permissible to factor irrigation at the soil survey stage of assessment pursuant to SDCL 10–6–33.1(a) and 10–6–33.2, notwithstanding that it may be considered more appropriately later in the assessment process under SDCL 10–6–33.1(3),[2] and (5).[3] This court has repeatedly held that substantial compliance with statutory mandates is sufficient to uphold an assessment system. *Mortenson v. Stanley County*, 303 N.W.2d 107, 112 (S.D.1981); *In re Refusal of State Board of Equalization*, 330 N.W.2d 754 (S.D.1983); and *Knodel v. Board of County Commissioners*, 269 N.W.2d 386, 389 (S.D.1978).

The landowners carried the burden "to show the assessed valuation was in excess of true and full value, lacked uniformity in the same class or was discriminatory." *Knodel*, 269 N.W.2d at 389 (*citing Yadco, Inc. v. Yankton County*, 89 S.D. 651, 237 N.W.2d 665 (1975)). Findings must specifically reflect this burden was met. *Id.* at 390. "Noncompliance with mandatory statutes and excessive valuations are not sufficient to grant a taxpayer relief. Findings must specifically show that if there was noncompliance with statutory mandates, the tax levied was unjust and inequitable; ...." *Id.* As in *Knodel*, the trial court failed to enter such findings. That failure likely was the result of an absence of supportive evidence. Actually, several of the landowners testified they did not believe their lands were assessed at higher than true value, or that the assessments were unfair within the same class. I do not see this as a claim that the assessment lacked uniformity or was discriminatory. Neither do I find the tax was unjust or inequitable given the facts.

I would accordingly reverse the trial court.

I am hereby authorized to state that Justice WUEST joins in this dissent.

**2.** Note, however, that the term market value in SDCL 10–6–33.1(3) is defined in part by reference to the soil production capacity under SDCL 10–6–33.1(1). In *In re Refusal of State Board*, 330 N.W.2d 754, 760–61 (S.D.1983), we held that market value may be considered but it is not absolutely mandated by SDCL 10–6–33.1. Moreover, A.R.S.D. 64:03:04:09 refers to "special

conditions," which could also include the irrigation factor in determining true and full value.

**3.** SDCL 10–6–33.1(5) allows the assessor to consider "other agricultural factors" in fixing the true and full value, which could include irrigation.