326 So.2d 421 (1976)
J. Ed STRAUGHN, As Executive Director of the Florida Department of Revenue, et al., Appellants,
v.
K & K LAND MANAGEMENT, INC., a Florida Corporation, Appellee.
No. 46397.
Supreme Court of Florida.
January 14, 1976.
Rehearing Denied March 4, 1976.
*422 Robert L. Shevin, Atty. Gen., and William R. Cave and Larry Levy, Asst. Attys. Gen., and Michael D. Martin of Martin & Martin, Lakeland, for appellants.
Ernest J. Rice of Lowndes, Peirsol, Drosdick & Doster, Orlando, for appellee.
SUNDBERG, Justice.
This is an appeal from the Circuit Court of the Tenth Judicial Circuit, in and for Polk County, which entered a final judgment declaring Section 193.461(4)(c), Florida Statutes, to be unconstitutional. This Court has jurisdiction pursuant to Article V, Section 3(b)(1), Florida Constitution.
*423 Appellant Straughn is Executive Director of the Department of Revenue, State of Florida. Appellant Rhoden is Tax Assessor for Polk County, Florida. Rhoden reclassified land owned by appellee as non-agricultural by denying appellee's application for an agricultural assessment for the year 1973. This determination by the Tax Assessor resulted in a reassessment of the subject property and a substantial increase in appellee's tax liability.
Section 193.461(4)(c), Florida Statutes, reads as follows:
"Sale of land for a purchase price which is three or more times the agricultural assessment placed on the land shall create a presumption that such land is not used primarily for bona fide agricultural purposes. Upon a showing of special circumstances by the landowner demonstrating that the land is to be continued in bona fide agriculture, this presumption may be rebutted."
It was upon the authority of this rebuttable statutory presumption that the Tax Assessor based his action. "Purchase price paid" is set forth by Section 193.461(3)(b), Florida Statutes,[1] as one of seven criteria to be considered by tax assessors in making their determination as to whether property qualifies as agricultural for purposes of the lower tax assessment. Presumably evidence tending to confirm the agricultural nature of assessable land, i.e. "special circumstances", should conform to the other six statutory considerations if the presumption established by Section 193.461(4)(c), Florida Statutes, is to be overcome.
In the instant case, the circuit court found Section 193.461(4)(c), Florida Statutes, to be unconstitutional as (1) an unlawful delegation of legislative authority without adequate standards and guidelines and (2) a contravention of the constitutional requirement that assessment be made solely on the "basis of character or use". The court also concluded that the land in question was on January 1, 1973  the relevant date for purposes of classification according to use  being used for bona fide agricultural purposes as defined by Section 193.461(3)(b), Florida Statutes, and therefore it qualified for the lower agricultural tax rate. Appellant Rhoden was ordered to make his assessment reflect this determination.
We are not persuaded that Section 193.461(4)(c), Florida Statutes, constitutes an unconstitutional effort to delegate legislative authority without proper guidelines. The phrase "special circumstances", indicating what must be shown in order to overcome the statutory presumption at issue, should be read in pari materia with Section 193.461(3)(b), Florida Statutes, and the seven criteria for determination of taxable status enumerated therein. These considerations, which must be weighed by local tax assessors, limit the discretion of such officials to a degree sufficient to escape constitutional infirmity. See Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935); *424 Conner v. Joe Hatton, Inc., 216 So.2d 209 (Fla. 1968); and Husband v. Cassel, 130 So.2d 69 (Fla. 1961), for discussion of the constitutional requirements in this regard. Further, we believe that the phrase "to be continued" as used in the challenged statute is neither ambiguous nor otherwise likely to lead to invidious classification. It simply requires the landowner who rebuts the presumption to demonstrate that he has not abandoned a bona fide agricultural use, as at January 1 of the year in question.
Nor are we persuaded that the challenged statute is unconstitutional under Article VII, Section 4(a), Florida Constitution, which provides that "agricultural land or land used exclusively for non-commercial recreational purposes may be classified by general law and assessed solely on the basis of character or use." It is alleged that the statutory presumption impinges upon the nature of the assessment authorized by the Constitution. We conclude, however, that the challenged statutory language affects only the classification of purportedly agricultural property, not its assessment. Further, the constitutional provision quoted above is permissive, not mandatory; that is, the Legislature could constitutionally remove the favored treatment of agricultural property, which constitutes an exception to the general constitutional mandate of full valuation for tax purposes. As we said in Rainey v. Nelson, 257 So.2d 538, 539 (Fla. 1972), "[T]here is no deprivation of a property right in denying special tax treatment to this property owner since there is no `right' to the special treatment in the first instance." In Rainey, this Court went on to uphold as a valid exercise of the State's police power Section 193.461(4)(b), Florida Statutes, which authorized county agricultural boards to reclassify lands as non-agricultural when such property is bounded by urban or metropolitan development on two or more sides and when such boards find that continued use of such property for agricultural purposes will deter orderly expansion of the community.
The test for the constitutionality of statutory presumptions is twofold. First, there must be a rational connection between the fact proved and the ultimate fact presumed. Tot v. United States, 319 U.S. 463, 466, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943); United States v. Gainey, 380 U.S. 63, 66, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965). Second, there must be a right to rebut in a fair manner. Goldstein v. Maloney, 62 Fla. 198, 57 So. 342 (1911); Black v. State, 77 Fla. 289, 81 So. 411 (1919).
We find that the instant statute meets both tests. The reduced taxation for farmland is based on a legislative determination that agriculture cannot reasonably be expected to withstand the tax burden of the highest and best use to which such land might be put. The agricultural assessed value is the amount that could be invested with a reasonable expectation of an annual return to the owner similar to what he would gain from other commercial enterprises with similar risks, liquidity, degree and level of management, etc. The rational presumption imposed by the Legislature is that land purchased for three or more times its assessed agricultural value is not intended to be put to "good faith commercial agricultural use" per Section 193.461(3)(b), Florida Statutes, supra. Property not put to such use is not entitled to the legislatively-created exception to taxation at full value represented by the agricultural use tax status. But a property owner may yet overcome the presumption that land purchased at three times its agricultural value falls into the non-agricultural category. Tax assessors, and courts which review their work, can scrutinize the then status of property laid before them for evidence of "special circumstances" suggesting that the agricultural use will continue. In this effort, the six other statutory considerations set forth in Section 193.461(3)(b), Florida Statutes will be most significant. In short, a sale for a purchase price which is three or more times the agricultural assessment placed on the land creates a red flag for *425 the assessor to re-evaluate the classification of such land as agricultural and places the burden upon the taxpayer to come forward with evidence of "special circumstances" within the framework of Section 193.461(3)(b), Florida Statutes, to establish that the land continues to be used for "bona fide agricultural purposes".
This statutory presumption is no exception to the general rule that presumptions are
"... decisive only in the absence of contrary evidence and must give way when in conflict with distinct and convincing proof... . [W]hen substantial evidence contrary to a presumption is introduced, the underlying facts that originally raised the presumption may or may not retain some degree of probative force as evidence, but they no longer have any artificial or technical force. In other words, the presumption falls out of the case, and cannot acquire the attribute of evidence in the claimant's favor ... . ."
13 Fla.Jur., Evidence, § 76, 83-84.
Del Vecchio v. Bowers, 296 U.S. 280, 286, 56 S.Ct. 190, 193, 80 L.Ed. 229, 233 (1935); Harlem Taxicab Ass'n v. Nemesh, 89 U.S. App.D.C. 123, 191 F.2d 459, 461 (1951); Mercury Cab Owners' Ass'n v. Jones, 79 So.2d 782, 784 (Fla. 1955).
We make no determination on whether the presumption has been overcome by the testimony and evidence in this cause. We leave that determination to the trial judge who may, if he deems it necessary, allow the parties to present additional testimony on that issue.
Accordingly, the judgment is reversed, and the cause is remanded to the trial court for further proceedings not inconsistent herewith.
ADKINS, C.J., ROBERTS, BOYD, OVERTON and ENGLAND, JJ., and FERRIS, Circuit Judge, concur.
NOTES
[1] "Subject to the restrictions set out in this section, only lands which are used primarily for bona fide agricultural purposes shall be classified agricultural. `Bona fide agricultural purposes' means good faith commercial agricultural use of the land. In determining whether the use of the land for agricultural purposes is bona fide, the following facts may be taken into consideration:

"1. The length of time the land has been so utilized;
"2. Whether the use has been continuous;
"3. The purchase price paid;
"4. Size, as it relates to specific agricultural use;
"5. Whether an indicated effort has been made to care sufficiently and adequately for the land in accordance with accepted commercial agricultural practices, including, without limitation, fertilizing, liming, tilling, mowing, reforesting, and other accepted agricultural practices;
"6. Whether such land is under lease and, if so, the effective length, terms, and conditions of the lease; and
"7. Such other factors as may from time to time become applicable."