558 So.2d 62 (1990)
Robert TOMLINSON, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. 89-01166.
District Court of Appeal of Florida, Second District.
January 31, 1990.
Rehearing Denied March 13, 1990.
*63 Stanley E. Marable, Sarasota, for appellant.
Jack Emory Farley of the Dept. of Health and Rehabilitative Services, Tampa, for appellee.
ALTENBERND, Judge.
Mr. Tomlinson appeals an order of the Department of Administration (DOA). That order upholds the determination of the Department of Health and Rehabilitative Services (HRS) that Mr. Tomlinson abandoned his position of employment with the state. We reverse the order and require that Mr. Tomlinson be reinstated with back pay.
After twenty-eight years of employment with the state, Mr. Tomlinson failed to contact his supervisor during a one-week illness. Relying on Florida's constructive abandonment regulation, Florida Administrative Code Rule 22A-7.010(2)(a), HRS notified Mr. Tomlinson that his unexcused absence for more than three days was a voluntary abandonment of his position with HRS. Mr. Tomlinson appealed the HRS decision to DOA. At the administrative hearing, DOA erroneously applied the constructive abandonment regulation as a conclusive presumption. The regulation is, at most, a rebuttable presumption. Although Mr. Tomlinson failed to disprove the predicate fact within the presumption, i.e., that he was absent without authorization for three consecutive days, he successfully disproved the ultimate fact within the presumption, i.e., that he abandoned his job. This was all that was required of Mr. Tomlinson to overcome the state's claim that he had "separated" from his position.

I. Mr. Tomlinson's "Separation"

At the time this controversy arose, Mr. Tomlinson was fifty years old and was employed by HRS as a public assistance specialist II. He had been an employee of the state for approximately twenty-eight years. In February 1986, he severely injured his back while working in an HRS office in Wauchula. As a result, he was lawfully out of work for approximately one year and received workers' compensation benefits. He received medical treatment during that period.
When Mr. Tomlinson was physically able to return to work part-time, he was assigned to an HRS facility in Lake Wales. Initially, he worked half days and experienced significant pain. Eventually, his doctor advised that he could return to work full time. Upon returning to full-time *64 work, he still experienced frequent back pain. He often lost time from work.
In January 1988, his supervisor, Ms. Tillett, counseled him because of his excessive absences and warned that further disciplinary action might be taken if he did not avoid unnecessary absences. Nevertheless, Mr. Tomlinson never received any written counseling or written disciplinary action for his absenteeism. At a counseling session, Mr. Tomlinson asked what procedure he should follow when he was absent because of back problems. At that session, Ms. Tillett advised him that he was not required to call in every day, but that he should wait until he saw his doctor before calling her to explain his status.
In August 1988, Ms. Tillett went to a meeting in Tallahassee. During her absence, Ms. Combee was in charge. It is undisputed that Mr. Tomlinson called Ms. Combee at the beginning of the work day on August 8, 1988. He told her that he would not be in to work that day because of illness. Whether Mr. Tomlinson told Ms. Combee his illness was a virus or a back problem is disputed. The parties also dispute whether Ms. Combee advised Mr. Tomlinson to call the following morning. It is undisputed, however, that Mr. Tomlinson did not call until Monday, August 15, 1988, after he had visited his doctor. By that time, Ms. Tillett had returned to the office. She advised him that HRS had decided his unexplained absence was a voluntary abandonment of his position and that he would receive written notification of separation from his position because of his voluntary abandonment.

II. The Administrative Appeal

Rule 22A-7.010 was promulgated by DOA to govern certain separations from state employment. Section 2(a) of that rule provides:
Abandonment of Position.
An employee who is absent without authorized leave of absence for 3 consecutive work days shall be deemed to have abandoned the position and to have resigned from the Career Service. An employee who has Career Service status and separates under such circumstances shall not have the right of appeal to the Public Employees Relations Commission; however, any such employee shall have the right to petition the department for a review of the facts in the case and a ruling as to whether the circumstances constitute abandonment of position.
The rule further describes the written notification of separation which the state must provide to an employee to announce the state's decision that the employee has abandoned his or her employment.
Once Mr. Tomlinson received his notice of separation, he filed a notice of appeal with both the Public Employees Relations Commission (PERC) and DOA. PERC entered an order dismissing the appeal as a petition for review of a separation order based on abandonment. PERC decided that the order invoked the jurisdiction of DOA. DOA accepted Mr. Tomlinson's notice of appeal and scheduled an administrative hearing. Following the hearing, the hearing officer found that Mr. Tomlinson had been absent between August 9 and 12, 1988, without authorized leave. The hearing officer's recommended order states:
The evidence presented at hearing leaves no doubt that Mr. Tomlinson was absent for more than three consecutive days and the resolution of the issue of whether he may thereby be deemed to have abandoned his position rests on the determination of whether his absence was without authorized leave of absence.
Mr. Tomlinson, it is clear, did not intend to separate from employment after 28 years of service. To be sure, his testimony of record clearly shows he intended to remain on the state payroll until he retired with 30 years service.
The proposed order further finds that:
19. There is no doubt that Petitioner suffers from a painful and debilitating back problem, incurred on duty with the State, which interferes with his duty performance and calls for his frequent absences. However, his absences, per se, are not the cause of his difficulty. He was terminated because he failed to properly notify his supervisors as to the *65 fact and conditions of his absence as required.
(Emphasis supplied.)

III. Two Preliminary Concerns

Mr. Tomlinson challenges only the nature of the proof required to overcome the regulatory presumption. Before addressing this dispositive issue, we confess that two additional issues trouble this court. We do not resolve these issues because they were not raised or preserved by Mr. Tomlinson, and HRS has had no opportunity to argue them.[1] Because our analysis of the chosen issue may be colored by our concerns over these other two issues, we discuss them.
First, we question whether DOA actually had jurisdiction over the administrative review. Admittedly, the language of the regulation places jurisdiction over such appeals in DOA. Under a prior statute, the First District upheld the validity of this regulation and held that PERC's predecessor, the Career Service Commission, did not have jurisdiction over separation hearings. Cook v. Div. of Personnel, Dep't of Admin., 356 So.2d 356 (Fla. 1st DCA 1978). The current statutes authorizing this regulation, however, only allow the DOA to retain jurisdiction in cases where the "separation" is not a "dismissal."
Section 110.217(6), Florida Statutes (1987), gives DOA authority to create regulations governing separation. The statute does not define "separation." For other purposes, "separation" has been defined to include both "quits" and "discharges." Int'l Ass'n of Machinists v. State, 153 Fla. 672, 680-81, 15 So.2d 485, 490 (1943). Although this statute may give DOA authority to regulate both voluntary terminations and involuntary discharges, it is not clear that this statute authorizes DOA to retain appeal jurisdiction over separations that are involuntary.
In light of a 1986 amendment to section 447.207(8)(10), Florida Statutes, PERC now has "exclusive administrative review" of actions "arising out of any suspension, reduction in pay, transfer, layoff, demotion, or dismissal of any permanent employee in the State Career Service System." A permanent status employee may only be dismissed for "cause," including "negligence, inefficiency or inability to perform assigned duties, insubordination, willful violation of the provisions of law or agency rules, conduct unbecoming a public employee, misconduct, habitual drug abuse, or conviction of any crime involving moral turpitude." § 110.227(1), Fla. Stat. (1987). Thus, it would seem that DOA now can retain jurisdiction of administrative reviews only when the separation does not come within PERC's exclusive jurisdiction of dismissals under section 447.207(8).
When a separation results from a voluntary resignation, it may well fall outside PERC's jurisdiction. A true abandonment of a state job may be a voluntary resignation. See generally 56 C.J.S. Master and Servant § 40 (1948). On the other hand, a constructive abandonment that is "deemed" by the state, but neither intended nor reasonably to be expected by the employee, has the indicia of a termination for cause which would invoke PERC's exclusive jurisdiction over dismissals. It is somewhat difficult to perceive a meaningful difference between a dismissal for willful violation of agency rules and a separation for the same act. As emphasized in our description of the facts, even the hearing officer described this case as a "termination."
This jurisdictional issue is significant because PERC has the authority to invoke penalties which are less severe than dismissal. § 447.208(3)(c), Fla. Stat. (1987). DOA, on the other hand, simply approves or rejects the determination of abandonment. In this case, one suspects that PERC would have chosen a less drastic punishment than dismissal for these mistakes by an employee with twenty-eight years of service. Although we do not decide the issue of DOA's jurisdiction in this case, our reasoning does narrowly interpret *66 "separation" to assure that PERC has full jurisdiction over all involuntary "dismissals."
Second, we question DOA's authority to promulgate this regulatory presumption. We recognize that the supreme court has upheld this regulation against a procedural due process challenge. Hadley v. Dep't of Admin., 411 So.2d 184 (Fla. 1982). Likewise, we recognize that the First District has generally approved DOA's authority to create this regulation. Cook. Nevertheless, we question whether DOA has a sufficient statutory authorization to create an evidentiary presumption of abandonment. The underlying statutes do not discuss abandonment or any presumption of separation. In a different context, we have recently held that "an agency of the executive branch of our government has no authority to formulate an evidentiary presumption." B.R. and W.C. v. Dep't of HRS, 558 So.2d 1027 (Fla. 2d DCA 1989). In that case, HRS created a presumption which it required DOA to use in DOA's quasi-judicial proceedings. It is at least arguable that DOA has broader authority to create reasonable presumptions for use at its own hearings. Since this issue has not been briefed, we decline to rule upon it.

IV. The Regulatory Presumption Could Be Rebutted by Disproving the Ultimate Fact

We turn now to the dispositive issue. Mr. Tomlinson argues that he presented evidence to overcome the presumption contained in rule 22A-7.010(2)(a) and that he is entitled to reinstatement because the evidence established, and DOA found, that he did not in fact abandon his job. HRS argues that, since the evidence established that Mr. Tomlinson was absent without authorization for three consecutive days, the hearing officer had no authority to reinstate Mr. Tomlinson. HRS successfully convinced both the hearing officer and DOA that the ultimate fact within the presumption must be accepted if the predicate fact is proven and not rebutted. HRS is incorrect.
A presumption is an assumption of fact which the law makes from the existence of another fact or group of facts. § 90.301(1), Fla. Stat. (1987). A presumption is typically an evidentiary tool which compels a trier of fact to find the truth of an ultimate fact which is only supported circumstantially by evidence of predicate facts and which is not satisfactorily rebutted by the opposing party's evidence. See C. Ehrhardt, Florida Evidence, § 301.1 (2d ed. 1984); McCormick on Evidence, § 342 (2d ed. 1972). Similar to an inference, in terms of logical analysis, if the predicate fact of a presumption is true, then the ultimate fact is also presumed to be true; if A, then B. Because of the regularity of our mail service, for example, a judge may find that the predicate fact A (a letter was mailed) compels a finding that the ultimate fact B (the letter was received) is also true. See Brown v. Giffen Indus., Inc., 281 So.2d 897 (Fla. 1973). Nevertheless, the mailing of a letter is merely circumstantial evidence that the letter was actually received.
HRS concedes that the regulation cannot and does not create a conclusive presumption. Straughn v. K & K Land Management, Inc., 326 So.2d 421 (Fla. 1976). It admits that Mr. Tomlinson must have a right to rebut the presumption in a fair manner. Straughn. HRS simply fails to understand that a presumption is effectively conclusive unless the opposing party has the ability to disprove either the predicate fact or the ultimate fact. HRS fails to see that a B proposition can be false, even though the A proposition is true. It is possible that a letter was not received even if it was mailed. See Abrams v. Paul, 453 So.2d 826 (Fla. 1st DCA 1984).
Thus, a party who is confronted by a presumption typically has two options. The party can present sufficient evidence to rebut the predicate fact.[2] This overcomes the presumption, but the fact finder *67 may still decide that the ultimate fact is true if there is substantial, competent evidence to support the ultimate fact. In the alternative, the party can present sufficient evidence to disprove the ultimate fact.[3] Indeed, presenting evidence to disprove the ultimate fact seems to be the most common method to overcome a presumption.
Just as a party is entitled to present evidence to establish that a mailed letter was not received, Mr. Tomlinson was entitled to establish that he did not abandon his job, even though he did not contact his supervisor for more than three days and his absence was unauthorized. If this were not true, the state could declare abandonment whenever an employee was in a coma or otherwise unable to call for authorization. In light of PERC's jurisdiction, all the employee is required to prove is that he had a reasonable basis for his failure to seek authorization for the absence. It is clear from this record that Mr. Tomlinson successfully proved by the preponderance of the evidence that he did not abandon his job. Once Mr. Tomlinson proved to the hearing officer that he did not abandon his job, DOA was obligated to reject HRS's determination of separation by voluntary abandonment. DOA had no authority to consider a dismissal or some lesser punishment; only PERC had that authority.
This court's decision in Department of Transportation v. Clancy, 521 So.2d 376 (Fla. 2d DCA 1988), does not require a contrary result. In Clancy, the employee took an unauthorized vacation, and the hearing officer factually determined that the employee had abandoned his job. This determination was overruled by DOA, which held that the Department of Transportation was "equitably estopped" to deny the employee's authorization because of DOT's prior conduct. In Clancy, the employee, as appellee, simply failed to preserve the argument that he had not abandoned his job and, instead, argued that DOT was equitably estopped to enforce the regulation. It is conceivable that the employee in Clancy could have proven to the satisfaction of the hearing officer that he did not abandon his job by taking the unauthorized vacation. The employee in Clancy did not satisfy that burden of proof. Mr. Tomlinson did.
Accordingly, we reverse the order of the Department of Administration and remand with instructions that Mr. Tomlinson be reinstated with back pay.
FRANK, A.C.J., and PATTERSON, J., concur.
NOTES
[1] We do not fault Mr. Tomlinson's attorney for his wisdom in choosing to raise only one successful issue.
[2] Some presumptions probably involve predicate facts which cannot be disproven either as a practical matter or as a matter of policy. For example, the presumption of sanity is based on the predicate fact that most people are sane.
[3] The extent of the party's burden to overcome the presumption depends on the type of presumption which is involved. A bursting bubble presumption, affecting the burden of producing evidence, is overcome with less proof than a presumption affecting the burden of proof. § 90.302, Fla. Stat. (1987). In this case, we can assume, without deciding, that the presumption shifted the burden of proof to Mr. Tomlinson. Thus, we have no need to discuss this complicated issue. McCormick on Evidence, § 345, pp. 820-21 (2d ed. 1972).