2000 SD 114

**James L. THARES and Traci L. Thares, Plaintiffs and Appellants,**

v.

**BROWN COUNTY BOARD OF EQUALIZATION, Defendants and Appellees.**

No. 21366.

Supreme Court of South Dakota.

Considered on Briefs May 30, 2000.

Decided Aug. 23, 2000.

James M. Cremer of Bantz, Gosch, Cremer, Peterson & Sommers, Aberdeen, Attorneys for plaintiffs and appellants.

Mark Barnett Attorney General David D. Wiest Assistant Attorney General, Pierre, Harvey A. Oliver, Jr., Brown County State's Attorney Victor B. Fischbach Brown County Deputy State's Attorney, Aberdeen, Attorneys for defendants and appellees.

GILBERTSON, Justice.

[¶ 1.] James L. Thares and Traci L. Thares (Thares) appeal the Brown County Board of Equalization's (County) assessment of their property, which was based on SDCL 10–6–33.14. Thares challenge the constitutionality of this statute. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] The facts in this case are stipulated. Thares purchased approximately 80 acres of land in Brown County on July 30, 1998 for $125,456, or $1600 per acre. They constructed a house, shop, and a horse barn on a portion of the land. They used the remainder of the land to grow crops and pasture livestock. Just prior to the purchase, the land was assessed and classified for tax purposes as agricultural property in the amount of $450 per acre, or $35,290. After the sale, County reclassified the Thares' property as non-agricultural, and the 1999 assessment raised the valuation of the land for tax purposes to $116,690. County relied upon SDCL 10–6–33.14 in raising the assessment, which requires all agricultural property that sells for more than 150 percent of its agricultural income value to be classified as a non-agricultural acreage.

[¶ 3.] After a parcel of agricultural property meets the sale[1] requirements of SDCL 10–6–33.14, the land is then valued "at the price for which such land sold multiplied times the level of assessment

---

1. The triggering mechanism of SDCL 10–6–33.14 is a sale of the realty. Thus, owners of agricultural realty who purchased it prior to July 1, 1998 when the statute went into effect, are not affected by it. Their land will continue to be taxed as agricultural as long as it is not sold for a price in excess of 150 percent of its agricultural income value. Likewise, owners of agricultural realty who purchased it after July 1, 1998 will not be affected as long as the purchase price was for less than 150 percent of the agricultural income value.

for non-agricultural property within the county." SDCL 10–6–33.18. Barring a successful administrative appeal by the taxpayer, once the land is classified as non-agricultural land, it remains so classified for a minimum of five years pursuant to SDCL 10–6–33.17. After the five-year period, the director of equalization may reclassify the non-agricultural acreage as agricultural land if the land remains in agricultural use and the landowner submits an annual application to County.

[¶ 4.] The circuit court upheld the constitutionality of SDCL 10–6–33.14. Thares now challenge the constitutionality of SDCL 10–6–33.14 *et seq.* in this Court.

## STANDARD OF REVIEW

[¶ 5.] Since the parties have stipulated to the facts in this case, there are no factual issues to be resolved. Thus, this case presents a question of law, and this Court reviews the circuit court's decision de novo, giving no deference to its legal conclusions. *Yankton Ethanol, Inc. v. Vironment, Inc.,* 1999 SD 42, ¶ 6, 592 N.W.2d 596, 598 (citing *Thompson v. Summers,* 1997 SD 103, ¶ 5, 567 N.W.2d 387, 390) (other citation omitted).

## ANALYSIS AND DECISION

[¶ 6.] The South Dakota Constitution gives the legislature authority to create as many classes of non-agricultural property as it desires, so long as taxes are uniform on property within the same class. *Great Northern Railway v. Whitfield,* 65 S.D. 173, 272 N.W. 787, 791 (1937). S.D. Const. Art. VIII, § 15 provides:

The Legislature shall make such provision by general taxation and by authorizing the school corporations to levy such additional taxes as with the income from the permanent school fund shall secure a thorough and efficient system of common schools throughout the state. The Legislature is empowered to classify properties within school districts for purposes of school taxation, and may constitute agricultural property a separate class. Taxes shall be uniform on all property in the same class.

Thus, under the state constitution, agricultural land constitutes its own, separate and distinct class. *See also* SDCL 10–6–31, which states all property for the purposes of taxation is classified into separate classes of agricultural property and non-agricultural property.

[¶ 7.] In *Gould v. Pennington County Bd. of Equalization,* 1997 SD 129, 570 N.W.2d 846, we held SDCL 10–6–58 to be unconstitutional, as it created two classes of agricultural property, by classifying in its own separate agricultural class, agricultural property which sold for a price greater than 150 percent of its agricultural income producing value. SDCL 10–6–58 provided:

Any agricultural land, as defined in § 10–6–31.3, which sells for more than one hundred fifty percent of its agricultural income value is hereby classified for purposes of ad valorem taxation. The agricultural income value shall be determined pursuant to § 10–6–62.

We again reaffirmed our previous holding that while classes of non-agricultural property can be created by the legislature without limit, agricultural land is limited by the constitution to but a single class. *Gould,* 1997 SD 129, ¶ 8, 570 N.W.2d at 848 (citing *Great Northern Railway,* 65 S.D. 173, 272 N.W. 787, 792). We then determined that:

The adopted criteria [of SDCL 10–6–58] bears *no* relationship to any agricultural factors (type of land, productivity, etc.) but is based almost entirely on its sales price. Valuing the agricultural land, as in the present case, based upon its sales price is to set it apart from agricultural property and treat it as "non-agricultural," or other property. (emphasis in original).

*Id.* ¶ 17, 570 N.W.2d at 849–50. Thus the constitutional infirmity was not a separate classification for this type of property, but

making the classification an agricultural one.

■ [¶ 8.] In 1998 the legislature enacted a new statutory classification[2] in response to our decision in *Gould*. It included SDCL 10–6–33.14, "[c]lassification of non-agricultural acreage," which provides:

Any agricultural land, as defined in § 10–6–31.3, which sells for more than one hundred fifty percent of its agricultural income value is hereby classified for purposes of ad valorem taxation *as a non-agricultural acreage*. The agricultural income value shall be determined pursuant to § 10–6–33.15. (emphasis added).

Thares now challenge the constitutionality of the statute, contending that even with the added phrase "as a non-agricultural acreage," based upon our analysis in *Gould*, SDCL 10–6–33.14 is unconstitutional. Thares contend that SDCL 10–6–33.14 still creates an impermissible subclassification of agricultural property which is taxed at a higher rate. County argues that SDCL 10–6–33.14 is constitutional, because instead of placing Thares' land into a subclass of agricultural property, their property is reclassified from agricultural to non-agricultural acreage. We agree with County.

■ [¶ 9.] Initially, we must note that "there is a strong presumption that the laws enacted by the legislature are constitutional and that presumption is rebutted only when it clearly, palpably and plainly appears that the statute violates a provision of the constitution." *Gould*, 1997 SD 129, ¶ 6, 570 N.W.2d at 847. "[T]he party challenging the constitutionality of a statute bears the burden of proving beyond a reasonable doubt that the statute violates a state or federal constitutional provision." *Id.* (citing *Cary v. City of Rapid City, South Dakota*, 1997 SD 18, ¶ 10, 559 N.W.2d 891, 893 (citing *Sedlacek v. South Dakota Teener Baseball Program*, 437 N.W.2d 866, 868 (S.D.1989))).

■■ [¶ 10.] Additionally, the legislature has broad power to classify property for taxation purposes:

Where there is power to impose a license or privilege tax, the Legislature may classify and may subclassify the objects of the tax upon some reasonable basis.... The determination of the question of classification is primarily for the Legislature and courts will not interfere unless the classification is clearly arbitrary and unreasonable. "The power of the state to classify for purposes of taxation is of wide range and flexibility." *Louisville Gas & Electric Co. v. Coleman*, 277 U.S. 32, 37, 48 S.Ct. 423, 425, 72 L.Ed. 770, 774.

*State v. Black Hills Transportation Co.*, 71 S.D. 28, 20 N.W.2d 683, 685 (1945). " 'It is well agreed that the legislature may select some occupations for taxation and not others, and may classify for the purpose provided the classification is reasonable and not arbitrary and bears some relation to the subject in hand.' " *Berdahl v. Gillis*, 81 S.D. 436, 136 N.W.2d 633, 638 (1965) (quoting *State v. Welsh*, 61 S.D. 593, 641, 251 N.W. 189, 210 (1933)); *see also Brink Electric Construction Co. v. State*, 472 N.W.2d 493, 501 (S.D.1991) (quoting *Phillips Chemical Co. v. Dumas School District*, 361 U.S. 376, 385, 80 S.Ct. 474, 480, 4 L.Ed.2d 384, 390 (1960) (stating "the State's power to classify is, indeed, extremely broad, and its discretion is limited only by constitutional rights and by the doctrine that a classification may not be palpably arbitrary.")); *Enron Corp. v. Spring Indep. School Dist.*, 922 S.W.2d 931, 936 (Tex.1996) (stating the state legislature may constitutionally draw any distinction in classifying property for ad valorem tax purposes, as long as the classifications are not unreasonable, arbitrary, or capricious). Notably, Thares do not argue County's decision to classify their property as non-agricultural land

---

**2.** The legislature also repealed the statutory scheme of SDCL 10–6–58 through 10–6–62,

after this Court declared it unconstitutional in *Gould*.

was arbitrary and capricious, but instead focus solely on their constitutional claim.

[¶ 11.] We concluded in *Gould* that the phrase "... may constitute agricultural property as *a* separate class," indicates that agricultural property, if classified separately, was to form a class unto itself. 1997 SD 129, ¶ 13, 570 N.W.2d at 849. "The use of the language 'a separate *class*' in the singular, ... [establishes] that agriculture was to be designated as one class of property and *all other properties* were the other class*es* of property." *Id.* (emphasis in original). However, as noted there is no prohibition on the number of non-agricultural classes of property allowed under our state constitution. *Great Northern, supra.* That determination has

3. SDCL 10–6–31.2 provides: "Leased school and endowment lands as provided in chapter 5–11 are hereby separately classified for the purpose of taxation."

4. SDCL 10–6–35.19 provides: "All commercial, industrial and nonresidential agricultural real property which increases more than ten thousand dollars in true and full value as a result of reconstruction or renovation of structures is specially classified for purposes of taxation."

5. SDCL 10–6–31 provides in part:
   Agricultural property includes all property used exclusively for agricultural purposes which is not handled for resale by wholesale or retail dealers. It includes all land used exclusively for agricultural purposes, both tilled and untilled, the improvements on such land, other than buildings and structures, and the livestock and machinery located and used on such agricultural land.
   Non-agricultural property includes normally occupied dwellings on agricultural land and automobile garages or portions of buildings used for that purpose by the occupants of such normally occupied dwellings, and all other property not classified as agricultural property.

6. SDCL 10–6–31.3 provides:
   For tax purposes, land is agricultural land if it meets two of the following three criteria:
   (1) At least thirty-three and one-third percent of the total family gross income of the owner is derived from the pursuit of agriculture as defined in subdivision (2) of this section or it is a state-owned public shooting area or a state-owned game pro-

been constitutionally left to the legislature. For example, SDCL 10–6–31.2[3] creates a separate class or sub-class for leased school lands, while commercial, industrial and nonresidential property is referenced in SDCL 10–6–35.19.[4]

[¶ 12.] SDCL 10–6–33.14 does create a separate class of land, however, it creates a *nonagricultural* class of land, i.e., land that "sold for more than 150 percent of its agricultural income-producing value." By enacting this statute, the legislature determined that all agricultural land which sells for more than 150 percent of its agricultural income-producing value, would thus not fall within the definition of "agricultural land" in SDCL 10–6–31[5] and SDCL 10–6–31.3.[6] The circuit court was

duction area as identified in § 41–4–8 and it is owned and managed by the Department of Game, Fish and Parks;
(2) Its principal use is devoted to the raising and harvesting of crops or timber or fruit trees, the rearing, feeding and management of farm livestock, poultry, fish or nursery stock, the production of bees and apiary products, or horticulture, all for intended profit pursuant to subdivision (1) of this section. Agricultural real estate also includes woodland, wasteland and pasture land, but only if the land is held and operated in conjunction with agricultural real estate as defined and it is under the same ownership;
(3) It consists of not less than twenty acres of unplatted land or is a part of a contiguous ownership of not less than eighty acres of unplatted land. The same acreage specifications apply to platted land, excluding land platted as a subdivision, which is in an unincorporated area. However, the board of county commissioners may increase the minimum acre requirement up to one hundred sixty acres.
*However, for tax purposes, land is not agricultural land if the land is classified pursuant to § 10–6–33.14 as a nonagricultural acreage.* (emphasis added).
The dissent while declaring the three criteria to be a legislative decision to "make a meaningful distinction between agricultural and non-agricultural land," fails to acknowledge the last sentence of the current statute which was a post-*Gould* amendment to incorporate the classification set forth in SDCL 10–6–33.14. We do not have the authority to pick and choose those portions of a statute that are in accord with our views and set aside the

correct when it concluded "the legislature created an additional non-agricultural classification, not a second agricultural class." Thus, since SDCL 10–6–33.14 reclassifies property from agricultural to non-agricultural property, the Thares' land becomes by statutory definition, a "non-agricultural acreage."

[¶ 13.] Prior to its purchase, the land in question was valued at $450 per acre. However, Thares purchased the property for $1600 per acre, nearly four times its previous agricultural valuation. While Thares claim the land continues to be principally used as agricultural land, since the purchase they have built a house and other structures on the property. It is simply not reasonable or logical to allow Thares to now own this property, bought at $1600 per acre, to only be assessed for taxation purposes at $450 per acre, or $35,290, the original assessment before application of SDCL 10–6–33.14, and limit any increased assessment to post purchase improvements. "[A] sale for a purchase price which is three or more times the agricultural assessment placed on the land creates a red flag for the assessor to reevaluate the classification of such land as agricultural...." *Straughn v. K & K Land Management, Inc.*, 326 So.2d 421, 424–25 (Fla.1976).

[¶ 14.] In *Straughn*, the appellee's land was reclassified from agricultural to nonagricultural, resulting in a substantial increase in his tax liability. The appellee challenged the constitutionality of the Florida statute [7] which gave the tax assessor the authority to classify the land as nonagricultural, arguing that his land was being used for bona fide agricultural purposes at the time of assessment, and thus qualified for a lower agricultural tax rate. *Id.* at 423.

[¶ 15.] In upholding the constitutionality of the statute in question, the *Straughn* court explained the rationale behind the presumption that agricultural land which sells for three or more times its assessment, is not being used for bona fide agricultural purposes:

> The reduced taxation for farmland is based on a legislative determination that agriculture cannot reasonably be expected to withstand the tax burden of the highest and best use to which such land might be put.... The rational presumption imposed by the Legislature is that land purchased for three or more times its assessed agricultural value is not intended to be put to 'good faith commercial agricultural use' per [the Florida statutes]. Property not put to such use is not entitled to the legislatively-created exception to taxation at full value represented by the agricultural use tax status. But a property owner may yet overcome the presumption that land purchased at three times its agricultural value falls into the non-agricultural category.

*Id.* at 424. Also important to the *Straughn* court's finding that the statute was constitutional was the fact that the presumption created by Florida statute was rebuttable by the taxpayer, who is able to "come forward with evidence of 'special circumstances' within the framework of [the Florida statutes] to establish

---

rest. We have consistently adhered to the proposition that a statute is to be construed as a whole and in harmony with other statutes. *Taylor Properties v. Union County,* 1998 SD 90, ¶¶ 14–15, 583 N.W.2d 638, 641. The dissent fails to adequately support its thesis that the criteria in SDCL 10–6–31.3 apparently could not be amended in 1998 and that "the county and legislature are limited to applying the criteria set forth in SDCL 10–6–31 and 10–6–31.3" prior thereto.

7. The Florida statute in question in *Straughn* provided:

> Sale of land for a purchase price which is 3 or more times the agricultural assessment placed on the land shall create a presumption that such land is not used primarily for bona fide agricultural purposes. Upon a showing of special circumstances by the landowner demonstrating that the land is to be continued in bona fide agriculture, this presumption may be rebutted.

Fla.Stat.Ann. § 193.461(4)(c).

that the land continues to be used for 'bona fide agricultural purposes'." *Id.* at 425.

[¶ 16.] Similarly, in South Dakota the legislature provides the taxpayer with an appeals route to challenge a decision of the director of equalization to classify real estate as non-agricultural rather than agricultural based on SDCL 10–6–33.14. *See* SDCL 10–11–16, 10–11–16.1, 10–11–22 and 10–11–26(3). With the passage of SDCL 10–6–33.14, the legislature created an alternative method for taxpayers to return their land to agricultural taxation status by following the provisions set forth in SDCL 10–6–33.17. SDCL 10–6–33.17 provides:

> Any land which is classified pursuant to §§ 10–6–33.14 to 10–6–33.19 shall remain so classified for a minimum of five years. Five years after the land is so classified, the land may be reclassified as agricultural land if the land remains in agricultural use during the five year period and if the owner of the land submits an annual application to the director of equalization. The application shall include verified documentation that · the land has been in agricultural use during [the] past year. If the land meets the criteria set forth in § 10–6–31.3, has been in agricultural use for five years, and the application requirement in this section is complied with, the director of equalization may reclassify the nonagricultural acreage as agricultural land.

[¶ 17.] It is only reasonable to conclude that when agricultural land sells for a substantially higher price than the income it is capable of generating, it has achieved a nonagricultural value in excess of its prior agricultural value and the property's classification should be reconsidered.[8] "[A]s long as a classification is reasonable and not arbitrary and bears some relation to the subject at hand, ..." this Court will uphold the legislature's classifications. *In re Sales Tax Liability of Valley Queen Cheese*, 387 N.W.2d 39, 41 (S.D.1986). As long as a "plausible policy reason for the classification" exists, classifications should be held constitutional. *Nordlinger v. Hahn*, 505 U.S. 1, 11, 112 S.Ct. 2326, 2332, 120 L.Ed.2d 1, 13 (1992). This standard is held to be "especially deferential in the context of classifications made by complex tax laws. [I]n structuring internal taxation schemes 'the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation.'" *Id.*

[¶ 18.] Our state constitution gives the legislature power to divide all property into separate classes, one agricultural and unlimited non-agricultural property. *Gould*, 1997 SD 129, ¶ 13, 570 N.W.2d at 849. Today we re-affirm our conclusion in *Gould* that, "[v]aluing the agricultural land, as in the present case, based upon its sales price is to set it apart from agricultural property and treat it as 'non-agricultural,' or other property." *Id.* ¶ 17, 570 N.W.2d at 849–50. The legislature has done nothing more than follow our conclusion and remedied its prior classification error which we struck down in *Gould.* It recognized there are instances where the current economic climate dictates land that has been used for agriculture has acquired

---

8. While agriculture and the family farm have recognized social and moral benefits (*see* SDCL 47–9A–1) for it to survive as a way of life, it must fundamentally also be considered a business. No explanation is offered how $450 per acre agricultural land can sustain a $1600 purchase price if the land remains agricultural. While we realize all agricultural operations are not profitable, and whether they are profitable or not is not a determinative factor to an agricultural classification, profit motive has been recognized as a factor which can be considered when determining whether the land is entitled to an agricultural classification. *Love PGI Partners, LP v. Schultz*, 706 So.2d 887, 892 (Fla.Dist.Ct.App. 1998). Specifically, Thares do not show how they can meet their investment cost and realize a reasonable profit from their land when they paid $1600 per acre for it. Neither do Thares argue they paid too much for the property or that it has decreased in value since its purchase.

a higher value for non-agricultural purposes as established by a fair market sale. *See e.g., Telkamp v. S.D. Bd. of Equal.,* 515 N.W.2d 689, 692 (S.D.1994).[9] The legislature, now in a constitutional manner, declares for taxation purposes what the free market system has already established, that the land's value as established by a recent sale, dictates it is no longer an "agricultural acreage."[10]

[¶ 19.] Here, by enacting SDCL 10–6–33.14, the legislature created another class of nonagricultural property, one in which sale price as related to income is for the most part determinative of whether land will be classified as nonagricultural. If this Court were to hold SDCL 10–6–33.14 *et seq.* unconstitutional, the legislature would be severely limited in any power to create different classes of nonagricultural property outside of municipal boundaries, and county tax assessors would not be able to accurately assess the true value of property which sells for much more than its agricultural income producing value.[11] This Court has also stated: "[a]ny legislative act is accorded a presumption in favor of constitutionality and that presumption is not overcome until the unconstitutionality of the act is clearly and unmistakably shown and there is no reasonable doubt that it violates fundamental constitutional principles." *West Two Rivers Ranch v. Pennington Co.,* 1996 SD 70, ¶ 15, 549 N.W.2d 683, 687 (quoting *Accounts Management, Inc. v. Williams,* 484 N.W.2d 297, 299 (S.D.1992)).[12] Thares have not established beyond a reasonable doubt that SDCL 10–6–33.14 is clearly and unmistakably unconstitutional. Therefore, this Court upholds the constitutionality of SDCL 10–6–33.14 *et seq.* The County's

---

9. *Nielsen v. Erickson,* 272 N.W.2d 82 (S.D. 1978) made the observation that as of the time it was decided in 1978, "there is nothing in the law that requires or permits an assessor to consider whether the land is economically self-sufficient[.]" *Id.* at 86. As previously noted SDCL 10–6–33.14 was not passed until twenty years later in 1998.

10. It was recognition of economic reality that led to the present constitutional
classification system in the first place. In *Great Northern* we stated:
Since 1929 the severity of the adverse conditions affecting agriculture in this state, of which we are now fully aware, makes complete our realization that this court failed to see in 1929 that which was apparently then plainly visible to the Legislature and the people. Commencing some time prior to 1923 and continuing until this very time, the agricultural industry in this state has been in a serious condition and fighting desperately for its existence. The prices for agricultural products have been far below normal.... This court knows that as a part of the general adverse conditions affecting agriculture in this state, prior to the enactment of the 1931 law, the taxes levied for school purposes meant practical confiscation of agricultural lands in many school districts....
272 N.W. at 792.

11. This Court agrees with the circuit court's reasoning:
Because comparable sales of agricultural property can be considered in determining the value of agricultural property, if property which sold for more than one hundred fifty percent of its agricultural income value is left in the classification of agricultural property, then the value of all agricultural property increases accordingly. By reclassifying this property as nonagricultural, this accelerator effect on other agricultural property is minimized.

12. Thares contend that the only solution for the legislature to create a separate classification of land such as the land in question is to amend the state constitution. The legislature proposed an amendment in 1998 to Article VIII, § 15, however, it failed at the November, 1998 general election. The legislature again proposed the same amendment in 1999, which would change the third sentence of Article VIII, § 15, to read as follows: "The Legislature is empowered to classify properties within school districts into separate classes for purposes of school taxation." This 1999 proposed constitutional amendment will be on the ballot for the November 2000 general election. However, even without a constitutional amendment, SDCL 10–6–33.14 *et seq.* remains constitutional as it corrects the deficiency found in the 1993 statutes declared unconstitutional in *Gould* by creating a separate distinct class of non-agricultural property, instead of creating a subclass of agricultural property.

decision assessing the value of Thares' property at $116,690 is affirmed.

[¶ 20.] MILLER, Chief Justice, and KONENKAMP, Justice, concur specially.

[¶ 21.] SABERS, Justice, dissents.

[¶ 22.] AMUNDSON, Justice, concurs in the result of the dissent.

MILLER, Chief Justice (concurring specially).

[¶ 23.] Despite Justice Sabers' interesting and persuasive argument that SDCL 10–6–33.14 unconstitutionally creates two classes of agricultural land for taxation purposes, I am unable to join him for the following reason.

[¶ 24.] The entire objective of SDCL ch. 10–6, indeed, the function of all SDCL Title 10, *is* to define and classify land as either agricultural or non-agricultural *for taxation purposes*. Since the sole function of Title 10 is to classify land for tax purposes, we must set aside our general perception of what constitutes "agricultural land;" it does not matter how we would ordinarily or initially classify it outside a taxation context. The very nature of SDCL Title 10 requires that, regardless of how it would be characterized in a non-tax setting, all land is either classified agricultural or non-agricultural and then taxed accordingly.

[¶ 25.] Our Constitution and case law make it clear that for tax purposes, the Legislature is free to make as many classifications of non-agricultural land as it deems necessary. However, it is limited to only one class of agricultural land. *See* S.D. Const. Art. VIII, § 15; *Gould v. Pennington County Bd. of Equalization*, 1997 SD 129 ¶ 8, 570 N.W.2d 846, 848; *Great N. Ry. v. Whitfield*, 65 S.D. 173, 272 N.W. 787 (1937). Beyond that limitation, the Legislature can define its sole class of "agricultural land" any way it wants for taxation

purposes, so long as it is not unreasonable, arbitrary or capricious. *See State v. Black Hills Transp. Co.*, 71 S.D. 28, 32–33, 20 N.W.2d 683, 685 (1945) (stating that the power to classify for purposes of taxation is of wide range and flexibility and will not be interfered with unless it is clearly arbitrary or unreasonable).

[¶ 26.] The Legislature's definition of "agricultural land" at SDCL 10–6–31.3 seems to meet that standard. In addition to using three ordinary, common methods to define agricultural land (income production, principal use, and size), the statute also refers to SDCL 10–6–33.14, which expressly excludes from the definition of agricultural land any land sold for more than 150% of its agricultural income value. In doing so, the Legislature has not created a second class of agricultural land, as the Thares argue. Rather, it has narrowed the agricultural class by removing from it certain parcels of land that it deems are no longer agricultural.

[¶ 27.] Based on the foregoing analysis, I am persuaded that SDCL 10–6–33.14 could not have unconstitutionally created two classes of agricultural land for taxation purposes.[13] Even though the statute may take land that would ordinarily be described as "agricultural land" (using the common vernacular) and classify it as non-agricultural land for tax purposes, I am persuaded that such action is permitted under the provisions of our Constitution. In our constitutional analysis of SDCL 10–6–33.14, the common, ordinary, everyday definition of "agricultural land" is irrelevant; what is at issue is whether the statute impermissibly creates two agricultural classes. In my view it does not.

[¶ 28.] KONENKAMP, Justice, joins this special writing.

SABERS, Justice (dissenting).

[¶ 29.] The majority opinion states that the South Dakota Legislature acted within

---

13. Whether SDCL 10–6–33.14 creates an unreasonable, arbitrary and capricious definition of agricultural land by relying entirely on sales price may have been a better argument for Thares. That argument, however, is not presented here.

the ambits of our constitution because it "created an additional nonagricultural classification, not a second agricultural class." I respectfully disagree.

[¶ 30.] Less than three years ago a *unanimous* South Dakota Supreme Court held in *Gould v. Pennington Cty. Bd. of Equal.*, 1997 SD 129, ¶ 18, 570 N.W.2d 846, 850:

> Some statutes define methods of *valuing* agricultural land; some statutes define methods of *assessing* land; and some statutes define methods of *measuring* market value. SDCL 10–6–58 does none of these. It creates a new classification. It takes land that is clearly agricultural land and treats it as agricultural land held for resale or agricultural land for which the owner may have paid too much. This Court has rejected the notion that the law requires or permits an assessor to consider whether the land is economically self-sufficient. We are reluctant to declare acts of the legislature unconstitutional. SDCL 10–6–58, however, is unconstitutional, because it attempts to create more than one class of agricultural land in violation of art. VIII, § 15 of the South Dakota Constitution.

How quickly things change. SDCL 10–6–33.14 [14] impermissibly creates two classes of agricultural land: agricultural land that is taxed as agricultural land and agricultural land that is taxed as nonagricultural land. The statute does not define methods of valuation, assessment or measurement of market value. Instead, it creates a new classification of agricultural land for taxation purposes only and is, therefore, prohibited by our constitution.

[¶ 31.] SDCL 10–6–33.14 refers to "agricultural land, *as defined in § 10–6–31.3* [.]" (emphasis added). Under SDCL 10–6–31.3, land must meet two of the three provided criteria to be classified as agricultural land for tax purposes:

> (1) At least thirty-three and one-third percent of the total family gross income of the owner is derived from the pursuit of agriculture . . .;

> (2) Its principal use is devoted to the raising and harvesting of crops or timber or fruit trees, the rearing, feeding, and management of farm livestock, poultry, fish, or nursery stock . . .;

> (3) It consists of not less than twenty acres of unplatted land or is a part of a contiguous ownership of not less than eighty acres of unplatted land. . . . .

Clearly, the legislature made great efforts to "make a meaningful distinction between agricultural and non-agricultural land." *Gould*, 1997 SD 129, ¶ 8, 570 N.W.2d at 848. *See also* SDCL 10–6–31 (distinguishing between agricultural and nonagricultural land for taxation purposes). Land is to be classified as agricultural or nonagricultural after considering the satisfaction of statutory characteristics (gross income derived from the land, principal use, and size), not solely on the purchase price. To do so violates our holding in *Nielsen v. Erickson*, 272 N.W.2d 82, 86 (S.D.1978):

> When classifying [land], there is nothing in the law that requires or permits an assessor to consider whether the land is economically self-sufficient; whether the owner has another occupation; whether the owner's primary source of income is connected to the land; whether the amount or value of the machinery is related to the size of the tract; whether the value of the house reflects the value of the land; and whether the size of the acreage creates a viable agricultural unit. *The legislature has not identified these factors as [ ] determinative of whether land is used exclusively for ag-*

---

14. This statute provides:

Any *agricultural* land, as defined in § 10–6–31.3, which sells for more than one hundred fifty percent of its *agricultural* income value is hereby classified for purposes of ad valorem taxation as a nonagricultural acreage. The agricultural income value shall be determined pursuant to § 10–6–33.15. (emphasis added).

*ricultural purposes, and only it can do so.*

(emphasis added). In other words, when classifying land as agricultural or nonagricultural, the county and legislature are limited to applying the criteria set forth in SDCL 10–6–31 and 10–6–31.3.[15] The only way a parcel of land fails to be classified as agricultural is if it no longer meets that criteria.

[¶ 32.] Contrary to clear constitutional and statutory directives, SDCL 10–6–33.14 provides that "agricultural land ... which sells for more than [150] percent of its agricultural income value is hereby classified ... as a nonagricultural acreage." By its plain language, this statute divides agricultural land, as defined in SDCL 10–6–31.3, into two separate classes based on the purchase price: (1) agricultural land that was purchased for *more than* 150% of the agricultural income value and (2) agricultural land that was purchased for *less than* 150% of the agricultural income value. Thus, despite meeting the agricultural land definition in SDCL 10–6–31.3 this land is considered nonagricultural land if it was purchased for more than 150 percent of its agricultural income value, under

SDCL 10–6–33.14. This arbitrary method of classification is unconstitutional because, as indicated, it creates two classes of agricultural land: agricultural land taxed as agricultural land and agricultural land taxed as nonagricultural land. There is simply no constitutional basis for this segregation of agricultural land.

[¶ 33.] Our recent holding in *Gould,* 1997 SD 129, 570 N.W.2d 846, is controlling here. *Gould* held that SDCL 10–6–58, the predecessor statute to SDCL 10–6–33.14, violated article VIII, § 15 of the South Dakota Constitution.[16] That statute provided:

Any agricultural land, as defined in § 10–6–31.3, which sells for more than one hundred fifty percent of its agricultural income value is hereby classified for purposes of ad valorem taxation. The agricultural income value shall be determined pursuant to § 10–6–62.

In an apparent response to our unanimous decision in *Gould,* the legislature repealed that statute and enacted this one, SDCL 10–6–33.14. The only difference between the two statutes is the addition of the phrase "is hereby classified for purposes of ad valorem taxation *as a nonagricultural*

---

15. This determination is clearly supported by the plain, statutory language used in SDCL 10–6–33.14: "Any agricultural land, *as defined in § 10–6–33.14,* which sells for more than one hundred fifty percent of its agricultural income value is hereby classified ... as a nonagricultural acreage." (emphasis added). If the legislature intended to use criteria other than those set forth in SDCL 10–6–31.3, it would not have chose to restrict the definition of agricultural land as *"defined in § 10–6–31.3."*

16. The majority opinion relies on Florida Supreme Court case, *Straughn v. K & K Land Mgmt., Inc.,* 326 So.2d 421 (Fla.1976). This case, however, is distinguished from the present case because the Florida Constitution permits multiple classifications of agricultural land. *See* Fla.Const. art. VII, § 4(a) (providing "[a]gricultural land ... may be classified by general law and assessed solely on the basis of character or use."). The South Dakota Constitution indisputably prohibits more than one class of agricultural land.

Additionally, in Florida, "only lands which are used primarily for bona fide agricultural

purposes shall be classified as agricultural." Fla.Stat.Ann. § 193.461(3)(b). The Florida statutes set forth seven factors to consider in determining whether land is used for "bona fide agricultural purposes," one of which is "the purchase price paid." *Id.* Our statutes do not permit such an individualized analysis.

Finally, under the Florida statutes, there is a presumption that agricultural land is not being used primarily for bona fide agricultural purposes when it is purchased for three or more times the agricultural assessment. Fla. Stat.Ann. § 193.461(4)(c). However, the presumption is rebuttable and the burden shifts to the purchaser to present evidence that "the land is to be continued in bona fide agriculture." *Id.* In other words, if the purchaser can prove that he intends to continue using the land for "bona fide agricultural purposes," the agricultural classification is reinstated regardless of the purchase price. SDCL 10–6–33.17 does not allow the purchaser to challenge a nonagricultural classification until five years have passed.

*acreage."* SDCL 10–6–33.14 (emphasis added). This additional language does not cure the continued constitutional violation. Furthermore, constitutional compliance is not restored by the additional language in SDCL 10–6–31.3, "for tax purposes, land is not agricultural land if the land is classified pursuant to § 10–6–33.14 as a nonagricultural acreage."[17] Our constitution can not be circumvented by effortlessly adding similar and meaningless verbiage into two statutes for the appearance of consistency. Therefore, our analysis in *Gould* is applicable:

> With the passage of [SDCL 10–6–33.14], any meaningful definition of agricultural property is blurred, to say the least. The statute attempts to treat land that is clearly agricultural land (as defined by [10–6–31.3] or by any other logical definition) and value it by multiplying the price for which it sold times the level of assessment of other agricultural land in the county. The adopted criteria bears no relationship to any agricultural factors (types of land, productivity, etc.) but is based almost entirely on its sales price. Valuing the agricultural land, as in the present case, based upon its sales price is to set it apart from agricultural property and treat it as 'nonagricultural,' or other property.

1997 SD 129, ¶ 17, 570 N.W.2d at 849–50. In other words, not only is the legislature constitutionally *prohibited* from creating more than one class of agricultural land, it is also constitutionally prohibited from using the purchase price as the sole distinguishing factor between agricultural properties because the purchase price "bears no relationship to any agricultural factors." This is precisely what the legislature did here.

[¶ 34.] The County claims the legislature merely re-classified this agricultural land as "nonagricultural acreage" instead of creating a second class of agricultural land. However, SDCL 10–6–33.14 amounts to nothing more than a mere guise of constitutional compliance; it does not render the disparate treatment of agricultural property constitutional. The legislature can not do by statute what the constitution prohibits. As indicated, our constitution can not be circumvented that easily. In order to treat agricultural land as separate classes, the legislature needs to seek a constitutional amendment instead of attempting to circumvent the constitution.[18] The County has proposed such an amendment, which may appear on the November 2000 general election ballot.

[¶ 35.] While noting SDCL 10–11–16, the majority opinion attempts to justify the legislature's creation of two separate classes of agricultural land by pointing out a purported "appeal route" as a "method for taxpayers to return their land to agricultural taxation status." However, SDCL 10–6–33.17 attempts to provide relief to Thares or to any taxpayers similarly situated, but it does not cure the constitutional defect. It is too little, too late.

[¶ 36.] SDCL 10–6–33.17 provides that "[a]ny land which is classified [as nonagricultural land per SDCL 10–6–33.14] shall remain so classified for a minimum of five years." In effect, this statute provides no immediate relief and no means of appeal-

---

**17.** Recently, in *Butte County v. Vallery*, 1999 SD 142, ¶ 16, 602 N.W.2d 284, 289, we reiterated that " 'farm management decisions cannot change the earth's value for taxation purposes.' " (quoting *In re Butte County*, 385 N.W.2d 108, 112 (S.D.1986)). Accordingly, I fail to see how the purchase price of agricultural land alters "the earth's value for taxation purposes."

**18.** The legislature may consider the purchase price of agricultural land when *assessing or valuing* land value, but not when *classifying* land. *See Nielsen*, 272 N.W.2d at 86. As we stated in *Gould*: "It is permissible to classify all property for assessment and valuation, but [SDCL 10–6–33.14] is an entirely new concept that attempts to value, assess, and tax agricultural land without regard to its status as agricultural land." 1997 SD 129, ¶ 16, 570 N.W.2d at 849. *See also In re Butte County*, 385 N.W.2d at 113 (holding that irrigated agricultural land cannot be classified separately from nonirrigated agricultural land).

ing the Board's decision for five years. In conjunction with SDCL 10-6-33.14, this statute allows the County to create a separate class of agricultural land, based solely on the purchase price, and maintain that status for a minimum of five years. Thereafter, if the landowner meets the criteria in 10-6-31.3, the land may be reclassified as agricultural. The bottom line is that the taxpayer is being punished for a period of five years, without an immediate remedy, for purchasing agricultural land for more than 150 percent of its agricultural income value *despite* satisfying the statutory definition of agricultural land in SDCL 10-6-31.3. As indicated, too little, too late.

[¶ 37.] The goal or legislative end (parity among taxpayers) is to be commended but the means selected by the legislature is simply unconstitutional. Unconstitutional means can not justify the end, no matter how desirable. Any remedy to the problem must be by constitutional amendment, not legislation. Just as we determined SDCL 10-6-58 to be unconstitutional in *Gould*, SDCL 10-6-33.14 "flies in the face of the constitutional amendment," 1997 SD 129, ¶ 16, 570 N.W.2d at 849, and we should reverse and remand.

AMUNDSON, Justice (concurring with the result of the dissent).

[¶ 38.] Under SDCL 10-6-33,

[a]ll property shall be assessed at its true and full value in money. The true and full value is the taxable value of such property upon which the levy shall be made and applied and the taxes computed. In determining the true and full value of property the director of equalization may not adopt a lower or different standard of value because it is to serve as a basis of taxation. The director may not adopt as a criterion of value the price for which the property would sell at a forced sale, or in the aggregate with all the property in the third class municipality or district. The director shall value each article or de-scription by itself and at an amount or price as he believes the property to be fairly worth in money. *The true and full value shall be determined by appropriate consideration of the cost approach, the market approach and the income approach to appraisal.* The director of equalization shall consider and document all elements of such approaches that are applicable prior to a determination of true and full value. (Emphasis added.)

[¶ 39.] In determining the full and true value of property for assessment purposes, "it is the duty of the assessor to use all of those techniques and facts which accurately reflect 'full and true' value and to reject those which do not.'" *See Yadco, Inc. v. Yankton County,* 89 S.D. 651, 655, 237 N.W.2d 665, 667 (1975) (quotations omitted). "Factors which ordinarily are to be considered include: 'replacement cost less proper deductions ... income from the property,' 'evidence of actual sales of other lands,' when such sales are made by willing buyers to willing sellers, and previous sales of the particular property in question." *See id.* (quotations omitted). Should the actual price for which a property has sold for be considered as a factor in determining valuation? I submit it should. While we have previously held that " '[a] single sale of property ... does not ordinarily determine true and full value of a property as there may be economic conditions of a temporary nature and other factors which prevent the same from being a true measure of value,' " we have never stated that the actual sale price should not be one of the factors considered in determining the ultimate valuation amount. *See Richter Enterprises, Inc. v. Sully County,* 1997 SD 61, ¶ 13, 563 N.W.2d 841, 845 (quotations omitted). In fact, we have stated that the determination of true and full value "permits evidence of all relevant factors and does not authorize assessing authorities to fix an assessment within a specific formula." *See Sheraton-Midcon-*

*tinent Corp. v. County of Pennington,* 77 S.D. 554, 95 N.W.2d 892, 896 (S.D.1959).

[¶ 40.] It is a simple principle that when property is recently purchased through an arm's length transaction with no unique circumstances or surrounding market conditions affecting the sale, the sale price should not be disregarded in considering what that property is worth. *See, e.g., Willow, Inc. v. Yankton County,* 89 S.D. 643, 648, 237 N.W.2d 660, 663 (1975) (comparing the sale price and the "willing buyer-willing seller test" to determine the true and full value of the property). In view of the fact that a sale between a willing buyer and willing seller is and should be considered in the assessment process, there is no need to create a special classification, such as "nonagricultural acreage." Therefore, I join in the result of the dissent of Justice Sabers.